EMANUEL DREYFUS *vs.* OLD COLONY TRUST COMPANY & others.

Suffolk. March 24, 25, 1914. — September 11, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Contract*, Construction. *Corporation*, Rights of shareholders under consolidation agreement. *Damages*, In equity.

Under a consolidation plan issued by a committee to the shareholders of three corporations, which were to be consolidated into a new corporation, all of the shares of the consolidating companies being deposited for exchange, it was provided, in regard to the shareholders of one of the consolidating companies, that a holder of preferred shares should receive an equal number of shares of the second preferred stock of the new company and that a holder of common shares was entitled to subscribe for an equal number of common shares in the new company at $15 a share. The consolidation plan contained the provision, "Any depositor failing to pay any instalment of such subscription, as and when the same shall become due and payable, shall, in the absolute discretion of the committee, its successors or assigns, forfeit all right and interest under this plan and agreement and any instalment or instalments theretofore paid." It was provided in the plan that the depositors of the old shares should have certificates of deposit issued to them and it was contemplated that such certificates should be assignable. A holder of both preferred and common shares in the consolidating company above referred to deposited all his shares of both kinds under the plan and subscribed for a number of the new shares of common stock at $15 a share equal to the number of his old shares of common stock. Afterwards he was notified to make payment upon his subscription and failed to pay any part of it. He transferred the certificate for his preferred shares without consideration to an assignee who presented it to the depositary and demanded a transfer of the certificate of deposit so that it should stand in his own name. The committee, acting in good faith under the advice of counsel, directed the depositary to refuse to transfer the certificate on the ground that the depositor of preferred shares who had assigned the certificate was in default upon his subscription for the common shares and to notify such depositor and his assignee that the committee in its absolute discretion might forfeit all of such depositor's rights under the plan unless he paid his subscription without

further delay. Upon the refusal of the depositary to transfer the certificate, the assignee brought a suit in equity against the members of the committee and the depositary to compel such transfer, and for damages. *Held*, that the provision of the consolidation plan quoted above for a forfeiture of "all right and interest under this plan and agreement" in case of a failure to pay a subscription for common shares referred only to all the right and interest of the defaulting shareholder in respect to his common shares; therefore, that the plaintiff was entitled to a decree for the transfer to him of a certificate of deposit representing his assignor's preferred shares; but that he was not entitled to damages.

LORING, J.   This suit grows out of a plan for the purchase and consolidation of the old United States Worsted Company, the Lawrence Dye Works Company, and the Silesia Worsted Mills, Incorporated, which was issued by the individual defendants as a committee in October, 1912.

The plan begins by stating the condition of the three companies and the reasons which had led to the conclusion that it was desirable that they should be consolidated by passing into one ownership. The suit now before us has to do with the rights of an owner of preferred shares in the old United States Worsted Company, and the terms of the plan in that connection only will have to be stated at length.

The capital stock of the old United States Worsted Company was divided into preferred and common shares. In the proposed consolidation and purchase holders of preferred shares of the old company were entitled to an equal number of shares in the second preferred capital stock of the new company, and holders of common shares of the old company were entitled to subscribe for an equal number of common shares in the new company at $15 a share, and such subscribers were entitled to one sixteenth of a share in the second preferred capital stock of the new company for each common share in the new company subscribed for.

The defendant the Old Colony Trust Company was named in the plan as depositary with whom the old shares were to be deposited and by whom the new shares were to be issued. On November 16, 1912, the plan was declared operative by the committee under a power given to them in the plan.

At the time that the proposed plan was issued one Charles M. Kahn was the holder of three hundred and twenty-three preferred shares and of one thousand eight hundred and fourteen

common shares in the capital stock of the old United States Worsted Company. On October 7 he deposited all of his shares with the Old Colony Trust Company and received a certificate for three hundred and twenty-three preferred shares and another certificate for one thousand eight hundred and fourteen common shares; and at the same time he signed a subscription agreement by which he agreed to pay to the new company $27,210. On the plan becoming operative on November 16, 1912, notice of that fact was sent by the committee to the common shareholders who had subscribed under the plan, and among others to Kahn. In this notice depositors of common shares were notified to make payment of their subscriptions. Kahn never paid any part of his common stock subscription. On December 9, 1912, Kahn indorsed the certificate of deposit for his preferred shares to the plaintiff, who seemingly made no payment to Kahn and was a volunteer merely. The plaintiff thereupon requested of the Old Colony Trust Company, at the counter, a transfer to himself of the certificate of deposit representing Kahn's preferred shares. Upon this request being made to the Old Colony Trust Company it referred the question to the committee. Later the trust company received a letter from the committee, in which the committee instructed the trust company to retain in its hands all of the second preferred shares and all the common shares in the new company to which depositors of preferred shares of the old company might be entitled under the plan, where such depositors had also subscribed to common shares but had failed to pay or thereafter should fail to pay the instalments of their common share subscriptions called by the committee; and in case such depositor of preferred shares had assigned his certificate for the same and the assignee presented the certificate with a request to transfer the same, the trust company was authorized and instructed to refuse to transfer the same on the ground that such depositor was in default in respect of his common share subscription, and to advise such depositor and his assignee that such depositor might in the absolute discretion of the committee, its successor or assigns, forfeit all right and interest under the plan, and that in the exercise of such discretion the committee might forfeit such depositor's rights to any second preferred shares and common shares as well as to certain amounts in cash which need

not be particularly stated, unless such depositor paid his subscription without further delay.

This letter was written under the advice of counsel whose standing and good faith in the matter are not questioned. Thereupon this suit was brought to compel the delivery of the certificate of deposit and to recover damages suffered by the plaintiff caused by the refusal to allow a transfer of the certificate of deposit.

The committee set up in their answer, as justifying their refusal to transfer the certificate of deposit to Mr. Kahn's nominee, this clause in the plan under which the shares were deposited by Mr. Kahn: "Any depositor failing to pay any instalment of such subscription, as and when the same shall become due and payable, shall, in the absolute discretion of the Committee, its successors or assigns, forfeit all right and interest under this Plan and Agreement and any instalment or instalments theretofore paid." The whole article of the plan, of which the paragraph set up in the answer of the individual defendants was a part, is set forth in full in the note below.*

---

* "VI."

"Method of Deposit."

"Stockholders of United States Worsted Company and The Lawrence Dye Works Company, who desire to assent to the provisions and to become entitled to the benefits hereof, must deposit their shares with the Depositary within the time limited by the Committee for such deposit or any extension thereof.

"Such deposits shall be made in the manner following, to wit:

"(a) Any holder of the preferred stock of United States Worsted Company and The Lawrence Dye Works Company must deposit with the Depositary his certificate or certificates of stock, duly endorsed for transfer; and

"(b) Any holder of the common stock of United States Worsted Company must deposit with the Depositary his certificate or certificates of stock, duly endorsed for transfer, and must contemporaneously with such deposit execute and deliver to the Depositary a subscription agreement, obligating himself to pay to the Committee, its successors or assigns, fifteen dollars ($15) for each share of common stock of United States Worsted Company deposited by him.

"Such subscriptions shall be payable as and when called for by the Committee, its successors or assigns, and the form of such subscription agreements shall be such as the Committee may prescribe.

"Any depositor failing to pay any instalment of such subscription, as

The single justice by whom the case was heard * ruled that the clause under which the defendants justified (quoted in full above) referred "to the rights of the common stockholder, as such," and had "no bearing upon his rights as a holder of preferred stock." And "as this was the only question raised before me at the hearing, I ruled that there should be a decree for the plaintiff." Thereupon the plaintiff filed a motion for reference to a master to report to the court the damages, if any, sustained by the plaintiff by reason of the failure of the defendants to carry out the agreement set out in the bill. Being of the opinion that the question of the right of the plaintiff to recover any damages from the defendants, as well as the question of the correctness of the ruling made by him, should be determined by the full court before further proceedings were had, the single justice reserved the case for the full court upon the pleadings and upon certain agreed facts which were filed after the ruling stated above was made.

1. We are of opinion that the ruling of the single justice was right. The question depends upon the construction of article VI of the plan of consolidation and purchase already set forth in full in a note. The first paragraph of that article deals with all the stockholders of the United States Worsted Company, both common and preferred; it provides that if they assent to the provisions of the plan and wish to become entitled to the benefits of it, they must deposit their shares with the depositary. The next paragraph is in these words: "Such deposits shall be made in

---

and when the same shall become due and payable, shall, in the absolute discretion of the Committee, its successors or assigns, forfeit all right and interest under this Plan and Agreement and any instalment or instalments theretofore paid.

"The Committee may limit the time for receiving deposits hereunder, and may, in their discretion, either generally or in special instances extend or renew the period or periods so fixed or limited for such further periods and upon such terms and conditions as they may see fit.

"Holders of stock not deposited within the periods fixed or limited therefor shall not be entitled to deposit the same or to become parties to this Plan and Agreement or to share in the benefits hereof, and shall acquire no rights hereunder, except upon obtaining the express consent of the Committee, who may withhold or give their consent in their absolute discretion, and upon such terms and conditions as they may see fit."

* *Hammond*, J.

the manner following: (*a*)." Then follows a provision as to what
must be done by the holders of preferred shares in the old United
States Worsted Company. Then comes a paragraph which begins
with " (*b*), " and provides what must be done by holders of common
stock in the old United States Worsted Company. It provides
that any holder of common stock must "contemporaneously
with such deposit" of his shares "execute and deliver to the
Depositary a subscription agreement, obligating himself to pay"
$15 for each share deposited by him. The next paragraph pro-
vides that such subscriptions "shall be payable as and when
called for by the Committee." That clearly has to do only with
the subject of paragraph (*b*), namely, the duties of holders of
common stock who deposit their shares under the plan. Then
follows the clause here in question, on which the committee rely:
"Any depositor failing to pay any instalment of such subscription,
as and when the same shall become due and payable, shall, in
the absolute discretion of the committee, its successors or assigns,
forfeit all right and interest under this Plan and Agreement and
any instalment or instalments theretofore paid." Then follow
two more paragraphs, the first of which authorizes the committee
to limit the time for receiving deposits, and the second provides
that holders of stock not deposited within the periods limited
by the committee shall acquire no rights under the plan except
upon obtaining the express consent of the committee.

Undoubtedly the last two paragraphs apply to deposits of both
kinds of stock. The question which we have to decide is whether
the paragraph next preceding the last two is a paragraph of the
same kind, applying to deposits of both kinds of stock, or is a
paragraph of the same kind as the two paragraphs next preceding
it, which confessedly apply to the deposit of common stock only.

The main. contention of the individual defendants is that by
the terms of the paragraph here in question, what the committee
have a right to declare forfeited is not "all right and interest in
respect of his common shares under this Plan and Agreement,"
but it is "all right and interest under this Plan and Agreement."
And they argue that there is nothing which will justify the court
in cutting down the scope of the paragraph arrived at by giving
to the words used their literal meaning. We do not think, how-
ever, that that is a true construction of this clause. If the con-

struction urged by the committee is the true one, the committee had more security for the payment of the subscriptions made by common shareholders where the common shareholder in the old company was also a holder of preferred shares in the old company, than it did where the same number of shares of preferred and common were held by different persons. In the absence of a provision in the plan making by express words that distinction, the conclusion should not be reached that it was intended that there should be that difference in the two cases. More than that, it is provided in the plan that depositors shall have certificates of deposit issued to them, and it is contemplated, if not provided, that those certificates of deposit should be assignable. In the absence of an express provision it could not be inferred that the rights of the assignee under an assignable certificate of deposit to the shares to which he is entitled under that certificate of deposit should depend upon the payment or non-payment by his assignor of his subscription in respect of common shares in the old and the new companies. For this reason we are of opinion that the clause in question deals with the same persons and rights dealt with in the clause next preceding it, and that the ruling of the single justice was right.

2. At the argument before this court the individual defendants contended that independently of the forfeiture clause neither Kahn nor his transferee was entitled to the transfer of the three hundred and twenty-three second preferred shares of the new company except upon paying to the committee the $27,210 which he agreed to pay on account of the one thousand eight hundred and fourteen common shares which he deposited under the plan.

The grounds for this contention are that it is settled that where a person has depleted a trust fund, whether by breach of trust or by simply being indebted to it, he cannot withdraw his proportion of the depleted fund; but on the contrary that the trustee can insist upon the sum which otherwise he would be entitled to withdraw being applied to make good the depletion in the fund. For a good statement of the rule see Underhill on Trusts, (7th ed.) 509, where the cases are collected. See also *Crocker* v. *Dillon,* 133 Mass. 91, 102.

When the individual defendants refused to transfer to the plaintiff the certificate of deposit representing the three hundred and

twenty-three second preferred shares in the new company, they based their refusal solely upon the right of forfeiture given to them by the clause in the plan of consolidation and sale set forth above. Not only that, but when the individual defendants filed their answer they justified on this ground alone. And finally, when the case was heard by a single justice, the only contention put forward by the individual defendants was the right of forfeiture already referred to. The contention now made was not then put forward and so was not passed upon by the single justice. By the terms of the reservation the only question reported to this court is the correctness of the ruling made by the single justice. However, we pass by the fact that this last contention of the individual defendants is not now open to them under this reservation. It is more satisfactory to rest our decision on the merits. We are of opinion that this contention of these defendants is without foundation.

Speaking with accuracy, there is no trust fund in the case at bar. Doubtless all subscriptions are held for the new corporation. So far as the assets of a corporation are trust funds there is a trust or *quasi* trust in the case at bar. We know of no case outside of a trust fund properly so called where the doctrine invoked by these defendants has been applied. The interest on which the plaintiff seeks to hold these defendants is not an equitable interest in a fund the legal title to which is in them. Kahn's interests in the new second preferred shares is a legal right, arising out of a common law contract, to shares of stock, that is to say, to the whole property itself, not to an equitable interest in it. What these defendants are asking for is to have this doctrine applicable in case of an equitable interest in a trust fund (strictly speaking) extended so as to raise a lien on shares of stock to which Kahn is entitled under a common law contract. More than that, they ask that this lien be raised by implication where a provision is expressly made whereby Kahn's obligation can be enforced, namely, the forfeiture of his subscription and all payments made under it.

We are of opinion that this doctrine should not be so extended and that the plaintiff is entitled to a decree directing the delivery to him of a certificate of deposit.

3. This brings us to the plaintiff's right to damages for the depreciation in the value of his shares since the defendants' wrongful refusal to deliver them.

*Prima facie,* the plaintiff would be entitled to damages if he suffered damages by reason of the wrongful refusal of the committee to transfer to him the preferred shares in the new company which he was entitled to receive under his deposit of preferred shares of the old company.

The individual defendants have contended that they are not personally liable for these damages because, if not strictly trustees, they were acting in a capacity like that of trustees and they took the proper course in refusing to transfer the stock, leaving the plaintiff to bring a suit to assert his rights under the plan. And in this connection they rely on what was said by this court in *Dimmock* v. *Bixby,* 20 Pick. 368, 374, 375. The contention would have been a good one had these defendants refused a transfer until the plaintiff had established his right to the stock, and had left him to bring a suit to assert his rights. But that is just what these defendants did not do. In place of refusing to act until the court should pass upon the question, they undertook to decide the question themselves and asserted a right to forfeit the shares. They cannot now escape liability for their wrongful refusal to deliver the plaintiff's property to the plaintiff because they need not have done so.

Next the committee have set up in defense of this claim for personal liability on their part the tenth article in the plan of consolidation and purchase which is set forth in full in the note.* If the terms of that article are held to mean what they say and are to be enforced, the defense is a good one. By this article it is provided that the committee "do not assume any individual

---

\* "X."

"Limitations upon Liability of Committee."

"The Committee shall have sole control, discretion and management under this Plan and Agreement, and will endeavor to carry the same into effect, but the members of the Committee do not assume any individual responsibility for the execution of this Plan and Agreement or any part thereof, nor for the result of any steps taken or acts done for the purposes thereof, nor shall the members of the Committee be individually liable for any act or omission of any agent or employee selected by the Committee, or for any error of judgment or mistake of fact or law, or in any case except for their own individual wilful malfeasance or neglect; nor shall the members of the Committee be liable for the acts or defaults of the Depositary."

responsibility," nor shall they "be individually liable . . . in any case except for their own individual wilful malfeasance or neglect." The plaintiff contends that this clause does not protect the committee from liability in this case. The ground on which this contention rests is, to quote his own words: "Damages are not asked for by the plaintiff as an assignee of a depositor, on account of an act done by the defendants in managing property entrusted to them under the plan, in consequence of which he suffered loss, along with all the other depositors or even alone. On the contrary, the charge against the defendants is that, having received property on certain conditions, they refused to recognize the plaintiff's rights in the property after due assertion of them. In other words, the act which has resulted in loss to the plaintiff was done by the defendants, not in carrying out the plan for the plaintiff, or his assignor, but in determining the rights of the plaintiff under the plan in a controversy between the plaintiff and the defendants with respect thereto." The plaintiff relies in this connection upon the doctrine of *Knox* v. *Mackinnon,* 13 App. Cas. 753, *Rae* v. *Meek,* 14 App. Cas. 558, and similar cases. The doctrine of *Knox* v. *Mackinnon,* relied on by the plaintiff, is stated by Lord Watson at page 765, in these words: "I see no reason to doubt that a clause conceived in these or similar terms, will afford a considerable measure of protection to trustees who have *bona fide* abstained from closely superintending the administration of the trust, or who have committed mere errors of judgment whilst acting with a single eye to the benefit of the trust, and of the persons whom it concerns. But it is settled in the law of Scotland that such a clause is ineffectual to protect a trustee against the consequences of *culpa lata,* or gross negligence on his part, or of any conduct which is inconsistent with *bona fides.* I think it is equally clear that the clause will afford no protection to trustees, who from motives however laudable in themselves act in plain violation of the duty which they owe to the individuals beneficially interested in the funds which they administer."

The plaintiff in making this contention has overlooked the fact that the committee were common agents. They were agents not only of the plaintiff but of all other persons who deposited shares under the plan. All persons who deposited shares under

the plan had a right to look to the committee to use their best endeavors to enforce the rights under the plan of all persons who had acquired rights under it when the plan became operative. Persons who deposited preferred shares without making a subscription had a right to look to the committee to use every means in their power to enforce the subscriptions which had been made under the plan. The committee were advised that the clause in question enabled them to enforce subscriptions by declaring forfeited the interest which a subscriber had in the second preferred shares of the new company by reason of a deposit of the preferred shares of the old company. One of the duties owed by the committee in carrying out the plan was (if this advice was right) to collect subscriptions by a declaration of forfeiture. It is evident, therefore, that the committee, in undertaking to declare forfeited the plaintiff's right to the second preferred shares of the new company by reason of his deposit of the preferred shares of the old company, were acting under the plan and not outside the plan, as the plaintiff has contended. Whatever, therefore, may be the limits of the doctrine as to the extent of the liability of persons justifying under such a clause, the defendants are justified in the case at bar. In addition to *Knox* v. *Mackinnon, ubi supra,* see in this connnection *Warren* v. *Pazolt,* 203 Mass. 328.

It is not necessary to discuss the liability of the trust company. Without going into the matter at length, it is plain that under the plan the depositary is not liable under circumstances where the committee are not liable.

It follows that the plaintiff is entitled to a decree for the delivery of the shares * and his costs, but not to have the case sent to a master upon the question of damages.

*So ordered.*

---

* After the filling of the bill, the certificates for the second preferred shares came into the hands of the committee to be delivered through the depositary to the holders of the certificates of deposit representing such shares, so that the rescript instead of ordering the depositary to transfer to the plaintiff the certificate of deposit to which he was entitled, ordered the delivery to him of a certificate for three hundred and twenty-three second preferred shares of the capital stock of the United States Worsted Company of Massachusetts.

*W. H. Best,* (*S. G. Barker* with him,) for the Old Colony Trust Company.

*J. L. Thorndike,* (*H. S. Davis* with him,) for the defendant T. L. Pomeroy and others.

*J. N. Clark,* (*R. H. Montgomery* with him,) for the plaintiff.