CHARLES A. DIGNEY & others, trustees, *vs.* FRED F. BLANCHARD
& others.

Suffolk.    January 11, 1917. — March 12, 1917.

Present: RUGG, C. J., LORING, DE COURCY, & CARROLL, JJ.

*Trust,* Construction of trust instrument, Misconduct of trustee. *Equity Jurisdiction,* To enforce trustee's liability. *Receiver. Equity Pleading and Practice,* Bill.

Provisions of a declaration of trust for the benefit of an unincorporated association of shareholders, which have for their main purpose the investment of the trust funds in and the management of real estate and give to the trustee subordinate powers incidental to that purpose, among others an authorization of the erection and repair of buildings "upon land belonging to" the trust and the development of such land, give to the trustee no power to use funds of the trust for the erection or alteration or repair of buildings upon land of others for an expected profit; and, if the trustee enters upon such an enterprise which is unsuccessful, he must repay to the association all loss sustained by it through such a wrongful diversion of the trust funds.

Under the circumstances above described the trustee cannot escape responsibility for his conduct by reason of a provision of the declaration of the trust that he should be liable only "for the result of his own gross negligence or bad faith."

If the trustee under the trust above described, acting in bad faith and with gross negligence, distributes dividends among the shareholders when there are no funds from which such dividends should be paid, and in order to do so borrows money on notes of the trust bearing interest at one per cent per month secured by mortgages upon its property, the trustee cannot be compelled, in a suit in equity brought against him by a receiver of the property of the trust in the name of trustees who succeeded the defendant, to repay the amount of such dividends, where it does not appear that the defendant profited by the transaction, nor that at the time of the payment of the dividends the trust was insolvent, nor that their payment rendered it so, nor that any creditor gave to the trust credit, nor that any shareholder purchased a share by reason of such dividends.

A bill in equity, brought by a receiver of the property of a trust, created by a

declaration of trust for the benefit of an unincorporated association of share-
holders, in the name of the trustee against a former trustee to recover losses
alleged to have been sustained by reason of improper conduct of the former
trustee unauthorized by the declaration of trust and also by reason of improper
payments of dividends from money borrowed for the purpose of paying divi-
dends, is not multifarious.

BILL IN EQUITY, filed in the Supreme Judicial Court on April 27, 1915, and afterwards amended, in the name of the trustees under a declaration of trust for an unincorporated association called the Associated Trust against a former trustee to recover losses resulting from certain alleged breaches of trust.

The defendants demurred to the amended bill. The demurrer was heard by *Braley,* J., by whose order an interlocutory decree was made overruling the demurrer, from which the defendants appealed. The suit afterwards was referred to a master and was reported by *De Courcy,* J., for determination by this court upon the pleadings, the interlocutory decree and appeal, and a first and a supplemental report by the master with the exceptions of the defendants thereto.

Material findings of the master are described in the opinion.

*W. R. Bigelow,* for the defendant Blanchard.

*J. Noble,* (*S. Vaughan* with him,) for the plaintiffs.

DE COURCY, J. The bill as amended is brought by the receiver in the name of the trustees of the Associated Trust, an unincorporated association existing under a declaration of trust, to recover for losses resulting from three alleged breaches of trust by Blanchard, the original trustee, hereinafter called the defendant. The defendants' demurrer and exceptions to the master's report raise the issues of the validity of these transactions.

1. The first alleged breach of trust is the agreement made by Blanchard, as trustee, to erect and complete certain buildings on lands of one Schulze, in which land and buildings the Associated Trust had no financial or other interest. This undertaking involved an expense of $2,894.21 beyond the sums paid for the work; which amount Blanchard paid out of the funds of the Associated Trust.

We find nothing in the declaration of trust to authorize this use of the trust funds. That instrument provided that the proceeds of the sale of shares, etc., should be invested in real estate and mortgages of real estate: it authorized the erection and re-

pair of buildings "upon land belonging to" the trust and the development of such land. The main purpose of the trust was the investment in and management of real estate, and provisions were made for the subordinate powers incidental to that purpose. But in our opinion the trustee was not authorized, either expressly or by reasonable implication, to use the funds in a building-contracting business, to erect houses on the land of others for an expected profit. The Schulze contract was not fairly incidental or auxiliary to the business of the Associated Trust, but was *ultra vires* of the trustee; and the payment complained of was a wrongful diversion of the funds of the trust. *Corkery* v. *Dorsey,* 223 Mass. 97. See *Greenfield Savings Bank* v. *Abercrombie,* 211 Mass. 252, 258; *Hill* v. *Murphy,* 212 Mass. 1; *Teele* v. *Rockport Granite Co.* 224 Mass. 20; 44 L. R. A. (N. S.) 876 note. And Blanchard is not exonerated from liability by section 14 of the declaration of trust, which provides that the trustee shall be liable only "for the result of his own gross negligence or bad faith." Whatever may be the extent of the liability of a trustee justifying under this clause, we do not construe it as affording him protection from a wilful and intentional breach of trust, committed by acting plainly beyond his powers. *Davis, appellant,* 183 Mass. 499, 502. *Tuttle* v. *Gilmore,* 9 Stew. 617, 622. *Mattocks* v. *Moulton,* 84 Maine, 545, 551. *Kimball* v. *Reding,* 31 N. H. 352. *Adair* v. *Brimmer,* 74 N. Y. 539. *Stewart* v. *Sanderson,* L. R. 10 Eq. 26. *Rae* v. *Meek,* 14 App. Cas. 558, 572, 573. See *Dreyfus* v. *Old Colony Trust Co.* 218 Mass. 546, 555.

2. The second alleged breach of trust was the undertaking by the trustee to do certain work of alterations and repairs on property owned by the Hotel Pilgrim Company, which resulted in a loss to the trust of $1,677. This also was an *ultra vires* contract; and what has been said with reference to the Schulze agreement is applicable to it. There is the added objection that Blanchard was the beneficial owner of the Pilgrim Hotel at the time of the contract, so that his interests and those of the trust were opposed. *Hayes* v. *Hall,* 188 Mass. 510, 511.

It follows that the defendant Blanchard is personally liable for the losses resulting to the Associated Trust from the Schulze and Hotel Pilgrim Company contracts.

3. On or about January 1, 1914, Blanchard as trustee of the Associated Trust distributed among its certificate holders the sum of $46,657.38 as a semiannual dividend of three per cent and an additional dividend of two per cent. At that time there was not a sufficient amount in the treasury from which these dividends could be paid, and he borrowed a large part of the money on notes of the trust, bearing interest at the rate of one per cent per month, and secured by mortgages on property owned by it. The master finds that in this unauthorized transaction the trustee acted in bad faith and was guilty of gross negligence, but that there was no evidence that he received any personal profit or benefit from the payment of the dividends. He further finds: "There was no evidence that any creditor of the trust gave credit to it or that any certificate holders bought certificates because of or relying upon the payment of the dividends." Also "There was no evidence concerning what authority the receiver might have in dealing with certificate holders, either by releasing them from any claims which the trust might have against them, or enforcing claims against them on account of the payment of the dividends to them, or that any such action or proceedings on the part of the receiver had been attempted or was contemplated."

There is no finding by the master that on January 1, 1914, the Associated Trust was insolvent, or that it became so by the payment of the dividends. In his original report it appears that the book value of the real estate was approximately $1,550,000. Among the items of personal property were notes receivable in the amount of $78,238, cash, material and equipment $45,520, accounts receivable $2,849, and sundry assets $32,561. Apparently the total secured indebtedness was $1,081,650; and when the receiver was appointed the unsecured debts outstanding January 1, 1914, and still unpaid, were $38,310. The shrinkage in the assets was undetermined. When the case was recommitted to the master to find, among other things, the values of the real estate at or about said January first, the plaintiff offered no evidence in support of the facts alleged in the amended bill of complaint, and stated at the hearing that he did not desire any findings in relation thereto. The statement of the master at the close of his supplemental report is: "As I am unable to make any definite finding as to the actual value of the real estate owned by

the trust on January 1, 1914, and as I am also unable to make any definite finding as to the amount of its outstanding unsecured debts at that time, it follows that I am unable to find, as requested by the defendant Blanchard, that the property of the trust on January 1, 1914, was amply sufficient to pay all its then existing unsecured debts."

So far as the plaintiff represents the certificate holders, there is no reason why the defendant personally should pay the amount of the dividend which he as trustee already has paid to those certificate holders. *Thompson* v. *Bemis Paper Co.* 127 Mass. 595. And as it does not appear that the Associated Trust was insolvent at the time the dividend was paid, the plaintiff, acting on behalf of possible creditors, cannot recover it from the certificate holders or from the defendant. The creditors had no such lien upon the capital of the trust while it was a solvent going concern as to permit them now to question this disposition of its property. *McDonald* v. *Williams*, 174 U. S. 397.

4. The bill is not multifarious. The three alleged breaches of trust arose out of the same trust agreement and conveniently could be considered in one suit. *Bliss* v. *Parks*, 175 Mass. 539.

5. What has been said disposes of all the questions raised by the demurrer and the exceptions to the master's report, that are now relied on. It follows therefrom that a decree should be entered in favor of the plaintiff for the losses caused to the Associated Trust by the Schulze contract and by the Hotel Pilgrim contract, with costs.

*Ordered accordingly.*