NORTH ADAMS NATIONAL BANK, trustee, *vs.* ETHEL QUINN
CURTISS, guardian, & others.

Berkshire.   December 10, 1931. — March 15, 1932.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Trust,* Exemption of trustee from personal liability, Investment by trus-
tee, Construction of instrument creating trust, Negligence of trustee,
Accounts, Trustee's fee.   *Negligence,* Of trustee.   *Words,* "Act done."

The will of one who died in 1918 established a trust for the benefit of
the testator's daughter for her life, the principal thereupon to be
divided among certain grandchildren in such manner as she should
appoint by her will; and further provided that the trustee should
invest and reinvest the trust fund, that he in his discretion might
retain the testator's investments and that "in the event of any loss
resulting to my estate through any act done or investment made in
connection therewith in good faith by . . . [the trustee, he] shall
not be held to any personal accountability or responsibility there-
for." In September, 1928, the testator's daughter died and by her
will appointed the principal of the trust to new trusts for the grand-
children during their lives.   In August, 1929, following affirmation
by this court of the validity of such appointment to new trusts, the
trustee under the testator's will and another were appointed trustee
of the new trusts.   Six accounts of the trustee under the old trust,
up to August 7, 1930, subsequently were allowed.   He then filed his
seventh account, for the period August 8, 1930, to October 31, 1930,
which showed distribution of most of the old trust fund to the new
trusts.   There was objection to the seventh account on the grounds
that the trustee had delayed his distribution improperly after August,
1929, and that he had been negligent with regard to holding certain
investments and to diversification of investments.   After hearing of
the account, at which a stenographer was appointed under G. L.
c. 215, § 18, as amended, the judge of probate found expressly that
the trustee did not act imprudently or negligently in delaying the
distribution of the old trust, that he had not been negligent in
the matter of investments and that he had acted in good faith in
the matter of investments; and a decree was entered allowing the
account.   Upon appeal by the respondent, it was *held,* that

(1) The testator had a right to provide in his will that the trustee
should be exempt from personal liability in his management of the
trust if he acted in good faith;

(2) That exemption continued to protect the trustee after the
death of the testator's daughter, the life tenant, until the trustee had
completed his duties under the old trust by distributing the principal

of the trust to the new trusts, unless he had forfeited that protection by acting in bad faith or by negligently failing to make the distribution within a reasonable time;

(3) There was nothing in the record to show that the finding, that the trustee had acted in good faith, was wrong;

(4) On all the evidence, including evidence that the distribution of the old trust fund required consideration of many matters, such as taxation, the advisability of raising necessary cash by selling securities in a falling market and the division of the property among the new trusts, and that there was litigation respecting the whole matter from February to August, 1930, this court could not say that there was error in the finding that the trustee had not acted imprudently or negligently in delaying the distribution;

(5) A decision by the trustee to retain certain investments was an "act done" within the meaning of those words as used in the clause in the testator's will exempting him from personal liability;

(6) Such provision for exemption was broad enough to protect the trustee in his conduct with respect to investments; and that provision did so protect him;

(7) There was no error in the allowance to the trustee by the judge of probate of a certain sum as compensation for his services in making the distribution;

(8) The decree was affirmed.

It *seems*, that no arbitrary rule of percentages of the whole of a trust fund which may be held safely by the trustee in one form of security has been adopted in this Commonwealth.

PETITION, filed in the Probate Court for the county of Berkshire on November 14, 1930, seeking the allowance of the seventh account of the surviving trustee under the will of Frank Curtiss, late of Sheffield.

The petition was heard by *Robinson*, J., a stenographer having been appointed under G. L. c. 215, § 18, as amended. Material evidence and facts found by the judge are stated in the opinion. By his order, a decree was entered allowing the account. The respondents appealed.

*R. P. Berle & A. A. Berle*, for the respondents.

*J. F. Noxon, Jr.*, guardian *ad litem*, submitted a brief.

*J. A. Haughwout*, (*C. T. Phelps* with him,) for the petitioner.

SANDERSON, J. This is an appeal by Ethel Quinn Curtiss as guardian of her three minor sons and by Roy Curtiss, a son who has become of age since the commencement of these proceedings, all of these sons being grandchildren of Frank Curtiss, deceased, from a decree of the Probate Court allow-

ing the seventh account of the North Adams National Bank
as sole surviving trustee of the trust under paragraph Twenty-
third, subdivision (1), of the will of Frank Curtiss. A guardian
*ad litem* was appointed for persons unborn or unascertained
who are or may become interested in the account.

Frank Curtiss died February 4, 1918. By his will his
entire residuary estate was divided into two equal parts,
one of which was given in trust for his daughter, Sophia, for
life, and upon her death without leaving issue the will pro-
vided that the principal should go to her nephews and nieces
"in such shares, estates and proportions and upon such
terms, conditions and limitations as my said daughter shall
by her last Will and Testament duly executed legally direct,
limit and appoint." In 1924 the North Adams National
Bank became cotrustee with Sophia Curtiss of this fund.
At that time it was appraised at $953,185.50.

On September 24, 1928, Sophia Curtiss died. By her will
she exercised the power of appointment given to her by her
father's will by appointing the remainder of the fund to four
new trusts of equal amounts for the lives of her four nephews,
Roy A., Franklin, Thomas Q. and Sidney Q. Curtiss.
Everett J. Esselstyn was named as her sole executor and
trustee.

The contention was made in behalf of these nephews that
the power of appointment had not been exercised legally,
but this court held in *North Adams National Bank* v. *Com-
missioner of Corporations & Taxation*, 268 Mass. 42, that the
exercise of the power was valid, and a final decree after
rescript to this effect was entered in the Probate Court of
Berkshire County on August 6, 1929. On the same day Mr.
Esselstyn and the bank were. appointed cotrustees of the
four new trusts.

The first and second accounts filed by the trustees under
the will of Frank Curtiss cover the period from the time the
bank became cotrustee with Sophia Curtiss to December
31, 1927. The third, fourth, and fifth accounts, and the
sixth as amended, were filed by the bank as sole surviving
trustee and deal with the administration of the trust from
January 1, 1928, to August 7, 1930.

On February 21, 1930, the guardian instituted three new proceedings: one to revoke the appointment of Mr. Esselstyn and the bank as trustees of the four new trusts; another to have them removed as such trustees; and the third to revoke a decree authorizing the payment of certain counsel fees in connection with the proceeding for instructions.

In April, 1930, the bank filed its sixth account, which before amendment covered the period from January 1, 1930, to March 27, 1930, and petitioned for the allowance of all six accounts. The guardian filed general and special objections to their allowance. An objection to the fourth, fifth and sixth accounts was in the following terms: "These accounts are all subsequent to the death of Sophia Curtiss. Under the will of Frank Curtiss, this trust for the benefit of Sophia Curtiss terminated and the powers of the trustee given by the will of Frank Curtiss as to this trust ceased. Any exercise of trust powers subsequently to the death of Sophia Curtiss not directed solely to the winding up of the trust was undertaken by the trustee at its peril and any loss resulting therefrom in any way is properly chargeable against the trustee. Likewise any loss arising from this failure to turn over the trust property as promptly as possible to enable the functioning of the trusts provided for by the will of Sophia Curtiss is chargeable to the accountant, upon appropriate proceedings."

The hearings on the three proceedings instituted by the guardian and on the allowance of the accounts were brought on together and evidence bearing on the issues raised was introduced. During the trial, the sixth account was withdrawn and a sixth account substituted therefor covering the period from January 1, 1930, to August 7, 1930. On August 13, 1930, with the consent of all the parties, decrees were entered dismissing the three petitions filed by the guardian and allowing the six accounts. At that time Mr. Esselstyn resigned as trustee under the will of Sophia Curtiss, leaving the bank as sole trustee of the four new trusts.

The seventh account was filed November 14, 1930, and covered the period from August 8, 1930, to October 31,

1930. This account showed distribution of most of the fund to the new trusts. The objections to this account are, in part, that when it is considered in connection with the six prior accounts it shows mismanagement of the trust by the bank resulting in losses of principal; that the bank as trustee has caused loss to the fund through delay in turning it over to the new trusts; that it failed to protect the fund after August 6, 1929, when the new trustees were appointed, pending distribution to the new trusts; that it negligently failed to diversify investment of the principal; that it neglected to follow prudent practice of trustees in having too small a proportion of the fund invested in high grade bonds; that there was an imprudent overinvestment in certain stocks; and that certain other stocks were improper for a trustee to hold. It is conceded that there was no duty to distribute to the new trusts before August 6, 1929, but it is contended that the distribution should have been made within a reasonable time thereafter, which the appellants say is not later than October 6, 1929, and this is the date used by them in computing the amount of the surcharge for which they seek to hold the bank with respect to the stocks as to which there was an alleged overinvestment. August 6, 1929, is used by them in computing the surcharge claimed on the stocks alleged to be improper for a trustee to hold.

After passing on the requests for rulings by the respective parties the judge of probate made findings and rulings in the following terms: "I. I find as a fact that in the matter of the hearing on the allowance of the first and second accounts of the North Adams National Bank and Sophia Curtiss as trustees under the will of Frank Curtiss, late of Sheffield, in said county, under paragraph Twenty-third, subdivision (1), and in the matter of the hearing on the allowance of the third, fourth, fifth and sixth accounts of said North Adams National Bank as sole surviving trustee, aforesaid, all matters in dispute including the investment of the funds were fully heard . . . . Evidence was introduced by the objector and by the accountant on these matters. After the close of the testimony but before arguments de-

crees were entered by me with the consent of the objector and the guardian *ad litem* allowing said six accounts. No petition was filed to reopen said decrees and they have not been reopened. II. I find as a fact that the trustee did not act imprudently or negligently in delaying the transfer of the trust estate to the trustees under the will of Sophia Curtiss. III. I find that the trustee's investment in and retention of its holdings of American Telephone and Telegraph Company, General Electric Company, First National Bank of Boston and Old Colony Trust Company were proper, and that no loss resulted to the estate by reason thereof. IV. I find that there was no loss to the estate by reason of the act of the trustee in the investment in and retention of a large percentage of the estate in common stocks. V. I find and rule that the trustee should not be surcharged for loss resulting to the estate from the investment in and retention of the following securities, namely: . . . [list of securities] by reason of clause twenty-six under the will of the testator. I find that the trustee acted in good faith in the investment in and retention of said securities and in all other matters relating to said estate. VI. I find that the fee of $16,243.54, which was allowed to the trustee for services in connection with the distribution of said estate, was just and reasonable. I have this day entered a decree upon the account accordingly."

The decision of the trial judge "will not be reversed unless plainly wrong, when it depends upon oral evidence of witnesses who testified in person before him." *Corkery v. Dorsey*, 223 Mass. 97, 100. *Witherington v. Nickerson*, 256 Mass. 351, 354.

Clause twenty-six of the will of Frank Curtiss is in the following terms: "Twenty-sixth: I further authorize and empower my said Trustees, their survivors and survivor, successor and successors, to keep the securities and other investments, which may be owned by me at the time of my death, in such form as the same may then be, and until they deem it to be for the best interests of my estate to change such investments into other forms of securities or investments, as are herein provided for; and it is my will

that in the event of any loss resulting to my estate through any act done or investment made in connection therewith in good faith by my said Trustees hereunder, they shall not be held to any personal accountability or responsibility therefor."

The contention of the appellants that the exemption provision in this clause of the will does not cover acts or omissions after the death of Sophia Curtiss cannot be sustained.   Paragraph Twenty-third, (1) (a) of the will of Frank Curtiss imposed upon any trustee under it the duty as to the trust fund not only "to invest safely, re-invest and to keep the same safely invested and to pay over the net interest and income arising therefrom . . . to . . . Sophia Curtiss, during the term of her natural life"; but also (1) (c) "If my said daughter shall die without leaving issue her surviving, then to pay over the principal of said trust fund with any accumulations then thereon to her nephews and nieces . . . in such shares, estates and proportions and upon such terms, conditions and limitations as my said daughter shall by her last Will and Testament duly executed legally direct . . . ."   It thus appears that the trust created by the will was not only to hold for the use of Sophia Curtiss but to turn over the trust fund and accumulations thereon at her death to the nephews and nieces as she should direct.   Although new beneficiaries were entitled to the income of the trust property from the time of the death of Sophia Curtiss, the trustee under the will of her father had not then completed its duties as trustee in accordance with the terms of the will creating the trust.   That duty continued until the trustee had paid over the principal to the new trusts established by the will of his daughter and performed the other duties involved in or incidental to the setting up of the new trusts and until that duty was accomplished the trustee was entitled to the protection of clause twenty-sixth unless it had forfeited that protection by acting in bad faith or by negligently failing to turn over the fund to the new trusts within a reasonable time.   In *Creed* v. *McAleer*, 275 Mass. 353, the court held that upon the facts in that case the

trustee was entitled to compensation for services rendered after the death of the life tenant.

The testator had the right to make the provision relating to the exemption of the trustee from personal liability. *Anderson* v. *Bean,* 272 Mass. 432.    See *Digney* v. *Blanchard,* 226 Mass. 335, 337; *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158, 167; *Matter of Clark,* 257 N. Y. 132.    There is nothing in the record to control the finding that the trustee acted in good faith in all matters relating to the estate and we are bound by it.    The finding that the trustee did not act imprudently or negligently in delaying the transfer of the trust estate to the trustees under the will of Sophia Curtiss cannot be said to be clearly wrong.    In the hearing on the earlier accounts the question whether there had been an unreasonable delay in turning over the trust fund to the new trustees seems to have been heard and decided adversely to the contention of the guardian for the period ending with August 7, 1930.    But when the question of delay arose again in connection with the seventh account the appellants, against the objection of the trustee, were permitted to introduce evidence on this issue not only for the time covered by the seventh account, but also for the period between the time when the new trustees were appointed and the end of the period covered by the sixth account.    At the close of the evidence the trial judge refused to give the rulings requested by the accountant, to the effect that the decrees entered on August 13, 1930, settling and allowing the first six accounts are *res judicata* as to all questions of surcharge against the trustee for anything that it did or failed to do to the trust fund prior to August 7, 1930.    He also refused to rule that the propriety of the trustees holding the securities appearing in schedule C of the sixth account up to August 7, 1930, is *res judicata* and cannot be again litigated in this proceeding.

For the purpose of this decision and upon this record, wherein the trustee has not appealed from rulings adverse to it, we will assume, without deciding, that the judge had the right to consider the whole period in deciding whether the delay in turning over the funds was unreasonable, and

upon that assumption we find no reversible error in the conclusions reached by him on this issue. There was testimony that the trustee at first expected to be able to complete the transfer early in January, 1930, and that counsel then acting for the guardian stated that this would be satisfactory. The testimony tends to prove that the closing of the old trust involved the consideration of many matters, including those relating to State and federal taxation; to charges and expenses; to the advisability of selling securities in the low market, which followed the sudden drop in the price of stocks in the fall of 1929, to obtain the money to meet the obligations which should be met before the accounts were closed; to the method of transferring the securities; and to their division for the establishment of the four new trusts. There was evidence to justify the conclusion that the trustee was not delinquent in not anticipating the sudden drop in market prices which came in the fall of 1929, and in not selling securities or turning over the property before the new litigation was begun by the guardian in 1930. In January, 1930, new counsel came into the case and early in January an order of court was obtained requiring the trustee to file an account. The fifth account was prepared and filed on January 21, 1930, in compliance with this order.

The period of litigation involved in the three petitions to which reference has been made extended from February 21, 1930, to August 13, 1930. Evidence was introduced tending to prove that in June, 1930, a plan was agreed upon by counsel, with the approval of the court, for having the securities transferred into a "street name" preliminary to the turning over of the fund and setting up the new trusts upon the termination of litigation; that the process of having these transfers made was begun on or about July 1, 1930, and was in progress on August 13, 1930. On the latter date the question of counsel fees had not been settled, and the details of completing the transfers and division of the blocks of stocks and bonds of varying amounts into four equal parts, and the question what securities should be sold to pay expenses of litigation before the old trust was closed,

and expenses of administration and taxes, which amounted to a substantial sum, remained. The evidence tended to prove that the transfers of securities were practically completed on September 17, 1930, although the certificates for the shares of stock in a few companies were not received until later, but that the question of counsel fees was not heard and determined until October 14, 1930. These fees were paid and the accounts of the trustee closed as of October 31, 1930. In *Creed* v. *McAleer*, 275 Mass. 353, 357–358, the court held that upon the facts in that case the trustee might delay selling stocks after the life tenant's death and as a reasonable man might await the outcome of litigation in which the petitioner sought for an order for a partial distribution of the securities in kind. In *McCoole* v. *Mackintosh*, 267 Mass. 86, the court held upon its special facts that a period of two years after the termination of the trust was ample in which to distribute the fund and that a failure to make distribution in that time was unreasonable. In that case the trustee was held liable for a loss resulting because distribution was not made within that time. In the case at bar the judge could have found upon the evidence that the trustee was warranted in having all questions in dispute relating to the management of the old trust finally settled before any of the property should be turned over to the new trusts, and that the trustee used reasonable diligence in closing the old trust and setting up the new ones. See *Day* v. *Old Colony Trust Co.* 228 Mass. 225; *S. C.* 232 Mass. 207.

The questions whether the trustee was negligent in not making a greater diversification in its holdings as between stocks and bonds as well as in the percentages of the trust estate invested in the stock of single companies, and whether it was negligent in continuing to hold certain corporate shares which, it is contended, were not sound investments for a trustee, seem to have been raised and heard in connection with the allowance of the first six accounts, but testimony on these matters covering the period between August 6, 1929, and the end of the seventh account was allowed to be introduced, the trustee objecting thereto so far as it

involved the period covered by the first six accounts. The appellants contend that the question of surcharge was not and could not have been in issue at the hearing on the earlier accounts because then there had been no sale of securities and they had not been turned over to the new trustee. But it is apparent that the question whether the trustee should be allowed to continue to carry the investments shown in those accounts was open at the hearing on those accounts and if the accounts had been disallowed because the trustee was acting in violation of its duty in continuing to hold them, this might be a basis for a surcharge in a later account. See *Dickinson, appellant,* 152 Mass. 184; *Davis, appellant,* 183 Mass. 499; *Rowell* v. *Milliken,* 266 Mass. 448; *Anderson* v. *Bean,* 272 Mass. 432, 435, 440. But for the purposes of this decision we shall assume, without deciding, that the trial judge could hear evidence relating to these issues for the whole period at the hearing on the allowance of the seventh account.

At the time of the death of Frank Curtiss, as well as when the bank became a trustee in 1924, a large part of the estate was invested in stock of the American Telephone and Telegraph Company, of the General Electric Company and of The First National Bank of Boston, and as time went on the increase in the values of these securities resulted in these holdings representing an even greater percentage of the value of the whole estate. Most of this stock, as well as the securities referred to in paragraph V of the judge's findings and rulings, was in the estate at the time of the death of the testator. The facts that these investments were made by the testator and not by the trustee, that he was known as a man of sound business judgment, as well as the fact that he had made provision in his will for the guidance and protection of any trustee thereunder, were matters to be considered by the trustee with the other facts in deciding what course of action should be followed in regard to holding or disposing of the securities. *Harvard College* v. *Amory,* 9 Pick. 446. *Old Colony Trust Co.* v. *Shaw,* 261 Mass. 158, 167. *Matter of Clark,* 257 N. Y. 132. The trustee also was warranted in giving some consideration to the fact that a

sale of the securities at a large profit would result in a large tax.  Much evidence was introduced tending to prove that according to the best practice of trustees a greater part of the trust fund should have been invested in bonds and a much smaller percentage should have been permitted to remain invested in any one stock than was the case in the larger holdings of this trust.  It seems, however, that no arbitrary rule of percentages of the whole fund that may safely be held by a trustee in one form or security has been adopted in Massachusetts.  See *Harvard College* v. *Amory*, 9 Pick. 446; *Dickinson, appellant*, 152 Mass. 184; *Davis, appellant*, 183 Mass. 499; *Creed* v. *McAleer*, 275 Mass. 353. The evidence introduced on this issue was not conclusive of the rights of the parties in the case at bar.  The value of the larger investments was greater when the stock was turned over to the four new trusts than when the bank became trustee in 1924 principally because of rise in market value, but their value was substantially more before the decline in market values in the fall of 1929 than when turned over to the new trusts.  There would seem to be no reason for reversing the conclusion of the trial judge that no surcharge should be based upon these holdings. In *Creed* v. *McAleer*, 275 Mass. 353, the trustee was charged with the difference in value of securities when received by him and their sale price, not the difference between the peak and the sale price.  See *Bowker* v. *Pierce*, 130 Mass. 262; *Green* v. *Crapo*, 181 Mass. 55; *Kimball* v. *Whitney*, 233 Mass. 321, 334.

In *Exchange Trust Co.* v. *Doudera*, 270 Mass. 227, the trustee was charged not for a failure to sell when prices were high, but for a failure to use reasonable diligence to get the market price when he did sell.  It is not necessary to decide what our conclusions as to the various claims for surcharge would be if the testator had not undertaken to exempt his trustees from personal liability for losses to the estate so long as they acted in good faith, or if the bank were not, upon the facts found, entitled to the protection of this clause for the whole period until the bulk of the trust estate was turned over to the new trusts on October

31, 1930. In our opinion the scope of the exemption clause is broad enough to show an intention of the testator to protect his trustees acting in good faith from personal liability in such matters as continuing to hold the larger part of the trust investments until they were turned over to the new trusts, not making a greater diversification in the larger stock holdings, and not investing a larger proportionate part of the estate in bonds, as well as in continuing to hold the securities, shown in schedule C of the sixth account and in paragraph V of the judge's rulings and findings of fact. See *Matter of Clark*, 257 N. Y. 132.

In *Old Colony Trust Co.* v. *Shaw*, 261 Mass. 158, 163, the eighth clause of the will provided: "I authorize and empower my Trustees in their discretion to continue as long as they think wise to hold stock in mining companies and any other securities or property of any kind which may be found in my estate at my death, even though the same be unproductive of income or be of a kind not usually considered suitable for Trustees to select or hold, or be a larger proportion in one investment than the Trust Estate should hold." The court said at pages 166–167: "The power to retain the stock in the mining companies found in the estate of the testator as a permanent investment is conferred on the trustees by the eighth clause of the will . . . . It results that the stock held by the trustees in the Consolidated Company is an authorized investment and no duty has ever rested upon the trustees either to convert the stock which was in the estate into another form of investment or to hold and administer the stock interest as if a conversion had been made at the date of its acquisition." It appeared that the mining stocks held by the trustees in that case had depreciated in value, and at times paid no dividends, and although the question there raised was not precisely the same as that in the case at bar, the decision tends to support the contention that retention by trustees of stocks authorized by the testator to be retained may have the approval of the court, even though they depreciate greatly in value. The evidence concerning each of the securities held by the trustee has been considered

and upon the facts found we are of opinion that the conclusion that clause twenty-six of the will protects it from being subjected to a surcharge as to any of them should not be reversed. No good purpose would be accomplished by discussing these securities in detail.

The facts in *Digney* v. *Blanchard*, 226 Mass. 335, distinguish it from the case at bar. In that case the trustee was not acting within the scope of his powers, and the immunity clause was held to be no protection. The case of *Knox* v. *Mackinnon*, 13 App. Cas. 753, is likewise distinguishable because the trustees were not acting in good faith.

The appellants contend that the exemption clause cannot be invoked where there was a failure to act or to change investments. Such a construction would give to the exemption clause too narrow a meaning. It is not probable that the testator would expressly authorize the trustee to keep the investments unchanged in the terms used by him and in the same paragraph exempt the trustee from liability for loss only in case of a transfer or reinvestment. It seems obvious that he intended to exempt the trustee from liability so long as it acted in good faith and in what it deemed to be for the best interests of the estate, whether it retained the securities intact or sold them and reinvested the proceeds. The decision that investments be retained would be an "act done" within the meaning of this clause of the will. There was evidence that the trust officers of the bank and its board of directors gave much time and thought to the administration of this trust and frequently sought the aid of counsel in matters connected with it. The contention that the trustee has so violated its duty that it is not entitled to the protection of the exemption clause is refuted by the findings of the trial judge. Upon the evidence a finding was warranted that no surcharge should be made because of failure to sell securities so that the beneficiaries might receive a larger income; and also that no surcharge should be made against the trustee because it decided not to sell stock of the General Electric Company in 1930, when requested by counsel for the ap-

pellants to dispose of it or because of its inability to sell a part of it at the price set upon it at a later time.

No error appears in the order of the judge authorizing the payment of compensation to the trustee. There is no finding nor admitted fact to require the conclusion that the right to compensation had been forfeited by a neglect of duty. *Rowland* v. *Maddock*, 183 Mass. 360, 364. *Warren* v. *Pazolt*, 203 Mass. 328, 352. The finding of the trial judge that the amount awarded was just and reasonable is conclusive on this issue even though the valuation of one of the securities in the list which was considered by him in deciding what compensation would be just and reasonable was too high. No reversible error appears in the manner in which the trial judge dealt with the appellants' requests for rulings, nor in the rulings on evidence to which our attention has been invited by the appellants.

A careful perusal of the vast mass of testimony and documentary evidence in the case at bar and a consideration of all questions argued by the appellants have failed to disclose that the conclusions reached by the trial judge are plainly wrong or that there was reversible error in the proceedings.

*Decree affirmed.*