## COMMISSIONER OF INTERNAL REVENUE v. DAVIS et al. (two cases).

### Nos. 3784, 3785.

Circuit Court of Appeals, First Circuit.

Jan. 7, 1943.

Joseph M. Jones, Sp. Asst. to the Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Helen R. Carloss, and S. Dee Hanson, Sp. Assts. to the Atty. Gen., and J. P. Wenchel, Chief Counsel, and Ralph F. Staubly, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., for Commissioner.

Allison L. Newton and Nutter, McClennen & Fish, all of Boston, Mass., for respondents.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

PER CURIAM.

Respondent taxpayers are the executors under the will of George S. Fiske of Boston, Massachusetts, who died on January 18, 1936. The Board of Tax Appeals rendered two decisions, one determining a deficiency in income taxes of the estate for the period January 19–December 31, 1936, and the other determining a deficiency in estate taxes. In each case the Board fixed the deficiency at an amount less than that claimed by the Commissioner. The two cases are brought here by the Commissioner on petitions for review.

From the Commissioner's brief and statements of counsel at the oral argument, it appears that there remains no real controversy as to the correctness of the Board's decision in the income tax case (No. 3785). That decision is affirmed on the Board's opinion, reported in 45 B.T.A. 135.

We proceed to a consideration of the estate tax case (No. 3784). 45 B.T.A. 52. Here, also, we think the Board's decision was correct. Relevant portions of the applicable revenue act and of the Treasury Regulations are copied in the footnote.[1]

---

[1] Revenue Act of 1926, 44 Stat. 9, as amended by the Revenue Acts of 1932 and 1934.

"Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \*

"(d) [as amended by § 401 of the Revenue Act of 1934, 48 Stat. 680, 752] (1) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke \* \* \* except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

\* \* \* \* \*

"(f) [as amended by § 803(b) of the Revenue Act of 1932, 47 Stat. 169, 279]. To the extent of any property passing under a general power of appointment exercised by the decedent (1) by will, or \* \* \*." 26 U.S.C.A. Int.Rev.Acts, pages 227, 229, 230.

"Sec. 303 [as amended by § 805 of the Revenue Act of 1932, 47 Stat. 169, 280]. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts—

"(A) for funeral expenses,

"(B) for administration expenses,

"(C) for claims against the estate,

"(D) for unpaid mortgages upon, or any indebtedness in respect to, property where the value of decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate \* \* \* as are allowed by the laws of the jurisdiction \* \* \* under which the estate is being administered \* \* \*." 26 U.S. C.A. Int.Rev.Acts, page 232.

Treas.Reg. 80 (1937 ed.).

"Art. 32. Administration expenses.— The amounts deductible from the gross estate as 'administration expenses' are such expenses as are actually and necessarily incurred in the administration of the estate; that is, in the collection of assets, payment of debts, and distribution among the persons entitled. The expenses contemplated in the law are such only as attend the settlement of an estate by the legal representative preliminary to the transfer of the property to individual beneficiaries or to a trustee, whether such trustee is the executor or some other person \* \* \*. Administration expenses include (1) executor's commissions; (2) attorney's fees; (3) miscellaneous expenses. Each of these classes is consid-

George S. Fiske created a trust in 1903. The income of the trust was payable to Fiske for life, and upon his death "said trustees shall hold said property upon the trusts and dispose of the same in such manner as said George S. Fiske may by his last will appoint", with other provision in default of appointment. Fiske reserved the power, in conjunction with the trustees, to alter the trust in any particular. In his last will Fiske made a number of specific bequests and placed in trust all the residue of his estate, including property over which he had any power of appointment.

The trustees of the 1903 inter vivos trust did not distribute the trust funds immediately upon the death of Fiske on January 18, 1936, but continued to administer the same during the remainder of that year. Meanwhile the said trustees, who were also the executors and testamentary trustees under the decedent's will, filed a petition in the Probate Court for Suffolk County, Massachusetts, asking instructions as to the disposition of the corpus of the 1903 trust. The Probate Court, on December 1, 1936, ordered the trustees to wind up the affairs of the trust and transfer its assets to themselves as executors, to use them, as if they had been owned outright by Fiske, along with his other assets to pay debts, expenses, taxes and legacies, and to place the remainder in the testamentary trust.

■ Clearly the 1903 trust did not terminate immediately upon the death of Fiske. It necessarily had to continue for a reasonable time for the winding up of its affairs and the transfer of its property to the proper persons. See Rothwell v. Rothwell, 1933, 283 Mass. 563, 570, 186 N.E. 662. The Commissioner and respondents agree on this point. The Board explicitly so held in the income tax case (No. 3785), and we do not gather, from a reading of the Board's opinion, that it intended to hold otherwise in the estate tax case (No. 3784).

The value of the fund distributable under the 1903 trust was not less than $1,992,-146.92. Early in 1937 the trustees received $19,921.47 as a termination charge with respect to such trust. This charge, which was based on 1% of the aforesaid value, is conceded to be a reasonable and customary termination charge, which by long established custom in Massachusetts is payable to trustees when they finally surrender and distribute the property in their hands. In addition, trustees' commissions of $2,773.72, based upon a percentage of gross income for the year 1936, were paid to the said trustees in 1936.

As executors under the will of George S. Fiske, respondents filed an estate tax return in which they included as part of the gross estate the full value of the trust property under the 1903 trust. In Schedule J-2 of the estate tax return they deducted the sum of $19,921.47, representing the termination charge to which the trustees under the 1903 trust were entitled. The Commissioner disallowed this deduction, and the portion of the deficiency now in

---

ered separately in articles 33 to 35, inclusive.

"Art. 33. Executor's commissions.— The executor or administrator, in filing the return, may deduct his commissions in such an amount as has actually been paid or which at that time it is reasonably expected will be paid, but no deduction may be taken if no commissions are to be collected * * *

"Amounts paid as trustees' commissions do not constitute expenses of administration and are not deductible, whether received by the executor acting in the capacity of a trustee or by a separate trustee as such.

*   *   *   *   *.

"Art. 36. Claims against the estate.— The amounts that may be deducted under this heading are such only as represent personal obligations of the decedent existing at the time of his death, whether or not then matured, and interest thereon which had accrued at the time of death * * *. Only claims enforceable against the decedent's estate may be deducted * * *. Liabilities imposed by law or arising out of torts are deductible * * *.

*       *       *       *       *

"Art. 38. Unpaid mortgages.—Deduction is allowed of the full unpaid amount of a mortgage upon, or of an indebtedness in respect to, any property of the gross estate * * * provided the value of the property, undiminished by the amount of the mortgage or indebtedness, is returned as part of the value of the gross estate. If decedent's estate is liable for the amount of the mortgage or indebtedness, the full value of the property subject to the mortgage or indebtedness must be included as part of the value of the gross estate; the amount of the mortgage or indebtedness being in such case allowed as a deduction. But if decedent's estate is not so liable, only the value of the equity of redemption (or value of the property, less the indebtedness) need be returned as part of the value of the gross estate * * *."

dispute is based upon such disallowance. The Board held, overruling the Commissioner, that the termination charge was "a proper charge against the estate, allowed by the laws of Massachusetts, and deductible under section 303(a)(1) of the Revenue Act of 1926 as amended."

In Massachusetts, trustees' commissions are not prescribed by statute but are determined by the court on the basis of what is just and reasonable. Mass. G.L.(Ter.Ed.) c. 206, § 16; Parker v. Hill, 1904, 185 Mass. 14, 69 N.E. 336; North Adams National Bank v. Curtiss, 1932, 278 Mass. 471, 476, 485, 180 N.E. 217, 83 A.L.R. 607. However, it has become the practice for trustees to receive a percentage of the income during each year and a percentage of the total trust estate at the termination of the trust. The trust property is subject to a lien for the amount of the termination charge and the trustees need not pay over the principal upon termination of the trust without deducting the amount of such charge. See Am.L.Inst. Restatement of Trusts, § 242, comment e; Bradbury v. Birchmore, 1875, 117 Mass. 569. The Commissioner is in error in supposing that the termination charge was unearned at the date of Fiske's death and was paid for services rendered after his death. As above stated the trustees received separate commissions of $2,773.72 based upon a percentage of the gross income for 1936. If, in addition to that, the termination charge of $19,921.47 was also paid for the services of the trustees during the remaining months of 1936 after the death of Fiske, such payments would have been grossly excessive. The termination charge, based upon a percentage of the principal, was compensation for services of the trustees in the conservation of the trust fund for the entire period of its existence up to the time of its transfer to the executors under the will. So far as appears, the trustees would have received this same termination charge of 1% even though they had paid over the trust fund to the executors under the will immediately after Fiske's death.

The termination charge was not a personal liability of Fiske's and hence would not be deductible as a claim against his estate under § 303(a)(1)(C) of the Revenue Act of 1926 as amended. See Art. 36, Treas.Reg. 80 (1937 ed.).

Nor could it under any view be deductible as an administration expense under § 303(a)(1)(B), for that relates to expenses properly incurred by the executors in the ordinary administration of the decedent's estate, whereas the termination charge was an expense incurred in the administration of the 1903 trust prior to the transfer of the trust funds by the trustees to the executors under the will. Therefore Article 33 of Treasury Regulations 80, 1937 Ed., which forbids the deduction as an ordinary "administration expense" of commissions paid to the executors as trustees or to other trustees under the will of the decedent, clearly has no application to the present case. The Commissioner's reliance upon this article of the regulations seems to us to be wholly misplaced.

When the Board referred to the termination charge as "a proper charge against the estate" presumably it had in mind § 303(a)(1)(D) which provides for the deduction from the gross estate of any indebtedness in respect to property where the value of the decedent's interest therein, undiminished by such indebtedness, is included in the value of the gross estate. Probably it would have been more accurate to have excluded from the value of the gross estate the amount of the termination charge. The indebtedness of the 1903 trust estate for the termination charge was not a personal liability of the decedent Fiske, and Article 38, Regulations 80, 1937 Ed., provides in such a case that only the value of the property less the indebtedness need be returned as part of the value of the gross estate. Apart from that, the trust property was subject to a lien for the amount of the termination charge, representing the fair value of services rendered by the trustees; and therefore to that extent the trust property did not pass by virtue of the exercise of the power of appointment by the decedent within the meaning of § 302(f) of the Revenue Act of 1926, as amended. But for purposes of this case the result is the same whether the whole value of the trust property is returned as part of the value of the decedent's gross estate and the termination charge of $19,921.47 deducted under § 303 (a)(1)(D), or whether the said sum of $19,921.47 is excluded in the first instance from the value of the gross estate.

If Fiske had not put the property in trust during his lifetime, but had turned his ex-

tensive holdings over to an agent to manage for him on a commission basis, the agent's management commission, if unpaid at Fiske's death, would certainly have been deductible from the gross estate under § 303(a)(1). It would indeed be an odd result if Fiske's estate should be worse off, from the standpoint of estate taxes, on account of Fiske having in 1903 created a trust under which the trustees thereafter rendered the same type of valuable service in managing and conserving the property.

The decisions of the Board of Tax Appeals are affirmed.