MARY E. BURROW TRUST, THE FIRST NATIONAL BANK OF TOPEKA, F. G. WEIDLING, L. P. HUMPHREYS, AND ESTHER SHAFFER, COTRUSTEES, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 88895, 88896, 92964. Filed March 28, 1963.

*Allen F. Gerye, Esq.*, for the petitioners.
*Donald L. Sturm, Esq.*, for the respondent.

DAWSON, *Judge:* The respondent determined deficiencies in income and estate taxes of petitioners as follows:

[1] Proceedings of the following petitioners have been consolidated herewith for purposes of trial, briefs, and opinion : Estate of Mary E. Burrow, deceased, the First National Bank of Topeka, successor to the Central National Bank and Trust Co. of Topeka, executors, Docket No. 88896; and James R. Burrow II and Esther T. Burrow, Docket No. 92964.

| Docket number | Petitioner | Taxable year ended | Tax | Deficiency |
|---|---|---|---|---|
| 88895_____ | Mary E. Burrow Trust_____ | Oct. 31, 1957__ | Income_____ | $8,872.53 |
| 88896_____ | Estate of Mary E. Burrow, Deceased__ | _____ | Estate_____ | 10,320.61 |
| 92964_____ | James R., II, and Esther T. Burrow__ | Dec. 31, 1957_ | Income_____ | 3,313.61 |

### FINDINGS OF FACT.

The stipulated facts are so found and are incorporated herein by this reference.

Mary E. Burrow of Topeka, Kans., executed a declaration of trust on August 7, 1956, transferring certain income-producing properties to the Central National Bank and Trust Co. of Topeka, or its successor corporation, as trustee. After her death J. E. Merriam, L. P. Humphreys, and Esther Shaffer were to serve as cotrustees, hereinafter referred to as individual trustees.

Due to a consolidation in September 1957, of the Central National Bank and Trust Co. of Topeka and the National Bank of Topeka, the First National Bank of Topeka, as successor corporation, became cotrustee, and is hereinafter referred to as corporate trustee. The death of J. E. Merriam on November 6, 1961, necessitated the substitution of F. G. Weidling as an individual trustee.

Pertinent provisions of the trust instrument are summarized as follows:

1. The settlor reserved the right to revoke the trust in its entirety at any time during her lifetime.

2. The corporate trustee was directed to pay the income of the trust to the settlor during her lifetime, preferably quarterly.

3. The voting rights of the stock of Central National Bank and Trust Co., or its successor, comprising a substantial portion of the trust property, were to be exercised by the settlor during her lifetime and by the individual trustees after her death.

4. The corporate trustee was directed to have physical care and custody of all books, papers, securities, investments, or evidences of investments, constituting a part of the trust.

5. The trustees were to receive reasonable compensation for their services, notwithstanding the fact that any of the individual trustees may be officers, directors, or employees of the corporate trustee.

6. After the death of the settlor, the trustees were directed to pay from the corpus of the trust the expenses of the settlor's last illness, funeral, and burial expenses, and any and all estate, inheritance, and succession taxes.

7. The trustees were directed to make certain specific bequests and distributions of property to named beneficiaries after the settlor's death.

8. After the performance of the duties described above, the trustees were directed to divide the residue of the trust into equal shares or separate trusts for the benefit of the settlor's children, Jane Burrow Neilsen and James Randall Burrow II, and to hold such shares in trust for the children.

The settlor and the corporate trustee agreed that the fee of each individual trustee was to equal one-tenth of 1 percent of the reasonable market value of the trust estate per annum, to be charged to the income of the trust. The corporate trustee was to receive an annual fee of one-half of 1 percent of the first $100,000 value of the trust and one-fourth of 1 percent of the remaining value of the trust, to be charged against the corpus of the trust. During the year following the death of the settlor, the corporate trustee was to receive 1 percent of the Federal estate tax value of the trust assets in lieu of the normal annual fee. This fee was to be charged against the corpus of the trust and was to compensate the corporate trustee for the additional services made necessary by the death of the settlor.

The additional services which were performed by the corporate trustee following the death of the settlor included: (a) Preparing and filing the Federal estate tax return, (b) preparing and filing the Kansas State inheritance tax returns, (c) appraising the trust and estate assets which were to be included in the estate and inheritance tax returns, (d) dividing the trust after the settlor's death according to the terms of the trust, (e) consulting with the individual trustees in effecting the sale of bank stock to pay the estate and inheritance taxes, (f) performing accounting services, (g) paying expenses of the trust, (h) distributing specific gifts and bequests to named beneficiaries of the trust, and (i) other similar nonrecurring duties.

The primary duties of the individual trustees were to vote the stock of the Central National Bank and Trust Co., to approve the sale of such stock, and to approve various administrative duties of the corporate trustee.

Considering the size of the trust and the amount of services to be performed, the fees agreed to were reasonable in amount and were in accord with the customary practice in the Topeka area. Kansas law requires only that the fees be reasonable.

Mary E. Burrow, hereinafter sometimes referred to as decedent and settlor, died on October 12, 1956. She left a will dated August 7, 1956, in which she left her personal possessions to her children and directed that the remainder of her estate after the payment of debts be added to the Mary E. Burrow Trust to be distributed as provided in the trust instrument. The Central National Bank and Trust Co., or its successor, was appointed executor.

The Probate Court of Shawnee County, Kans., granted letters testamentary in the estate of Mary E. Burrow, deceased, on October 19, 1956, to the Central National Bank and Trust Co. of Topeka, succeeded by the First National Bank of Topeka.

The probate estate of Mary E. Burrow amounted to approximately $38,000 which was sufficient to pay all the debts incurred during the decedent's lifetime. After the payment of debts and specific bequests, the residue of the probate estate was distributed to the Mary E. Burrow Trust as provided by the decedent's will. The First National Bank of Topeka, as executor, administered the probate estate separately from the Mary E. Burrow Trust and received $1,000 as an executor's fee.

Separate Federal income tax returns were filed for the Mary E. Burrow Trust and the probate estate for the year ended October 31, 1957, with the district director of internal revenue, Wichita, Kans. The assets of the trust were not a part of the decedent's probate estate but were included in the decedent's gross estate for estate tax purposes. The gross estate was approximately $2 million. The Federal estate tax return for the estate of Mary E. Burrow was filed with the district director of internal revenue, Wichita, Kans., on January 13, 1958.

Trustees' fees in the amount of $22,934.79 were deducted as administration expenses by the Mary E. Burrow Trust on its income tax return for 1957 and also by the estate of Mary E. Burrow on its estate tax return. The fees represented payments made by the trust on September 13, 1957, to the following:

| | |
|---|---|
| Central National Bank and Trust Co. of Topeka | $19,112.33 |
| L. P. Humphreys | 1,911.23 |
| Esther Shaffer | 1,911.23 |
| | 22,934.79 |

J. E. Merriam, one of the individual trustees, waived the payment of his fee. The payments were for services performed before and after September 13, 1957, but the full amount was deducted by the trust in 1957 since the trust was on a cash basis of accounting.

Respondent disallowed the deduction in the entire amount of $22,934.79 to the trust for income tax purposes and to the estate for estate tax purposes.

The respondent further determined a $3,313.61 deficiency in the income tax of James R. Burrow II and Esther T. Burrow for the year 1957. James R. Burrow II, son of Mary E. Burrow, was entitled to 50 percent of the trust income after the death of his mother. He and his wife resided in Estes Park, Colo., and filed a joint return for 1957 with the district director of internal revenue, Denver, Colo.

The increase in distributable net income of the Mary E. Burrow Trust, due to the disallowance of the administration expenses, gave rise to the deficiency determined against James R. Burrow II, as 50 percent of the income would be attributable to him.

OPINION.

### Issue 1. Income Tax Deduction.

At the outset we stress that in these consolidated proceedings we are concerned with a trust, a probate estate, a gross estate, and a trust beneficiary. The probate estate is involved only insofar as it is a part of the gross estate for estate tax purposes.

The first issue concerns the deductibility of certain trustees' fees from the gross income of the trust. The Mary E. Burrow Trust deducted fees paid in the amount of $22,934.79 as expenses for the production of income under section 212, I.R.C. 1954.[2] Although the respondent disallowed the entire amount in his statutory notice of deficiency, he now contends for an allocation of the fees between those services performed by the trustees which were ordinary and necessary to the administration of the trust and those which were ordinary and necessary to the administration of the estate. It is the respondent's position that the amount of the normal fee of the individual trustees ($\frac{1}{10}$ of 1 percent of the value of the trust) and the corporate trustee ($\frac{1}{2}$ of 1 percent of the first $100,000 of the value of the trust and $\frac{1}{4}$ of 1 percent of the value in excess of $100,000) be allowed to the trust as an income tax deduction and the additional amount of the fee be allowed as a deduction to the estate. We have determined that such an allocation is unnecessary.

Trustees' fees are deductible under section 212, if ordinary and necessary and paid or incurred during the taxable year. Expenses incurred in winding up a trust or in continuing it after the death of the settlor have been held to be expenses for the management of property held for the production of income and deductible to the extent that such acts are not directly for the benefit of the beneficiaries. See *Trust of Bingham* v. *Commissioner*, 325 U.S. 365 (1945); *Anstes* v. *Agnew*, 16 T.C. 1466 (1951); and *Charles F. Neave*, 17 T.C. 1237 (1952).

---

[2] SEC. 212. EXPENSES FOR PRODUCTION OF INCOME.

In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—

(1) for the production or collection of income;

(2) for the management, conservation, or maintenance of property held for the production of income; or

(3) in connection with the determination, collection, or refund of any tax.

In *Trust of Bingham*, the Supreme Court held that trustees' expenses incurred by a trust in contesting an income tax deficiency, in paying a cash legacy, and in distributing the trust fund among legatees, were all deductible under a similar provision of the 1939 Code, section 23(a)(2), on the theory that such expenses were expenses of *management*, even though the trust had expired. In commenting on their deductibility, Mr. Chief Justice Stone said:

> the duties of the trustees were not only to hold the property for the production of income and to collect the income, but also, in administering the trust, to distribute the income and the principal so held from time to time, and the remainder of the principal at the expiration of the trust. Performance of each of these duties is an integral part of carrying out the trust enterprise. Accordingly, as the Tax Court held, the costs of distribution here were quite as much expenses of a function of "management" of the trust property as were expenses incurred in producing the trust income; and if "ordinary and necessary," they were deductible.

In the case at hand, the Mary E. Burrow Trust has sought to deduct trustees' fees for services performed in winding up the inter vivos trust for the benefit of the settlor and in continuing the trust for the benefit of the settlor's children. Following the death of the settlor, the corporate trustee distributed specific gifts and bequests to trust beneficiaries, paid trust expenses, performed accounting services, sold trust property to pay estate and inheritance taxes, and performed other duties to accomplish a division of the trust for the benefit of the settlor's children. The individual trustees exercised voting rights to stock held in trust, approved the sale of stock, and approved various administrative duties of the corporate trustee. We find all of these services to be ordinary and necessary to the management of the trust.

In addition to these services, however, the corporate trustee performed certain duties which are normally considered the functions of an executor. Although the corporate trustee was also the executor of the decedent's estate, it prepared and filed the estate and inheritance tax returns in its capacity as trustee. The trust officer in charge of the Mary E. Burrow Trust testified that the trustee fee received by the corporate trustee was to compensate for the preparation of the tax returns as well as for other "unusual duties which always occur in the year of death."

Respondent has asserted that this function does not represent an ordinary and necessary expense of the trust. We agree. The petitioners should not be allowed to juggle expenses between the trust and the probate estate and thereby gain a tax benefit by virtue of the fact that the Central National Bank and Trust Co. was serving both as

trustee and as executor. For this reason we have determined that the deduction for trustees' fees should be reduced by that portion of the total fee attributable to executor's duties. In making this allocation we find that such services are relatively minor in comparison to those performed by the corporate trustee in managing the trust. While we are not unmindful of the size of this estate and the responsibility thereby assumed, we have considered that there were no marital or charitable deductions and that the information concerning the bulk of the estate was already in the hands of the corporate trustee. Therefore, out of the $19,112.33 fee paid to the corporate trustee, we disallow only $1,000 as an expense of the trust.

Respondent has also implied that a portion of the fees in question is attributable to services performed before and after the tax year of the trust involved. Although this may be true, the fees would be deductible in the year paid since the trust is on a cash basis of accounting.

With the exception of the services that have been found to be executor's duties, we conclude that the services performed were ordinary and necessary to the management of property held for the production of income and, therefore, that the trustees' fees attributable to such services are deductible from the income of the trust.

### Issue 2. Income to Beneficiary.

Respondent determined a deficiency in the beneficiary's income tax for the year 1957 due to the increase in income to the trust which resulted from the disallowance of the deduction for trustees' fees. The trust instrument provided that after the two continuing trusts are established, the trustee is to pay half of the income to each beneficiary. Section 652 of the 1954 Code provides that the beneficiaries of a simple trust are taxable on that portion of the trust income which is required to be distributed, whether distributed or not. In this case, 50 percent of the increase would be taxable to James R. Burrow II.

Since we have determined that $1,000 of the trustees' fees is not deductible, it follows that the trust beneficiary realized additional taxable income in the amount of 50 percent ($500) of the increase in trust income.

### Issue 3. Estate Tax Deduction.

Because of the decedent's death within 3 years of the transfer in trust, her right to the trust income for life, and her power to revoke, the trust property was included in her gross estate for estate tax purposes under sections 2035, 2036, and 2038, respectively.

The trustees' fees in question were claimed by the estate as an administration expense, deductible under section 2053.[3] The parties are in disagreement as to whether subsection (a) or (b) of section 2053 is applicable. This disagreement arises from the meaning to be given to the phrase "property subject to claims."

Kan. Gen. Stat. Ann. sec. 33–101 (1949) provides that the assets of an inter vivos trust for the use of the settlor may be made subject to the settlor's debts. In the instant case, however, the probate estate of the decedent was sufficient to pay all the debts existing at her death so that the trust estate was not included in the probate estate.[4] H. Rept. No. 1337, 83d Cong., 2d Sess., p. 91 (1954), in respect to section 2053, speaks of property subject to claims as being the *probate* estate. Conversely, for purposes of this section, property not a part of the probate estate would be "property not subject to claims." Section 2053(b) is clearly the applicable statute here since the trust property was not, in fact, a part of the probate estate.

Section 2053(b) authorizes, for estates of decedents dying after August 16, 1954, deduction of amounts representing expenses of administering property not subject to claims which is included in the gross estate. Even before 1954, however, this Court had allowed expenses arising by reason of the decedent's death, either as deductions from the gross estate or as offsets against the value of property included in the gross estate.

In *Elroy N. Clark, et al., Trustees*, 1 T.C. 663 (1943), trustees' commissions for distributing trust corpus of a revocable inter vivos trust, and attorneys' fees for services performed after decedent's death in connection with trustees' accounting, were held to be charges against the gross estate and properly deducted therefrom for estate tax pur-

[3] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.
(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—
(1) for funeral expenses,
(2) for administration expenses,
(3) for claims against the estate, and
(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,
as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.
(b) OTHER ADMINISTRATION EXPENSES.—Subject to the limitations in paragraph (1) of subsection (c), there shall be deducted in determining the taxable estate amounts representing expenses incurred in administering property not subject to claims which is included in the gross estate to the same extent such amounts would be allowable as a deduction under subsection (a) if such property were subject to claims, and such amounts are paid before the expiration of the period of limitation for assessment provided in section 6501.
[4] While estate taxes may be considered "debts" of a decedent, it does not follow that property subject to estate taxes constitutes "property subject to claims" for purposes of section 2053(a). Otherwise, section 2053(b), which refers to "property not subject to claims," would be superfluous because all property included in the gross estate for estate tax purposes would then necessarily fall into the 2053(a) category.

poses under section 812(b) of the 1939 Code (comparable to section 2053 of the 1954 Code). In that case the trustees administered the affairs of the estate and were in possession of the estate, a situation similar to that existing here.

Expenses incurred by trustees in connection with a trust accounting after the death of the decedent were allowed in part as deductions from the gross estate under section 812(b) in *Emma Peabody Abbett*, 17 T.C. 1293 (1952). The Court followed the *Clark* case and the Third Circuit's reversal in 182 F. 2d 514 (1950) of *Estate of Haggart*, 13 T.C. 14 (1949). The gist of these decisions was that if the corpus of the trust is to be included in the gross estate for estate tax purposes, it appears incongruous for the expenses, relating to such property and brought about by decedent's death, to be disregarded in determining the net estate. The respondent acquiesced (1952–2 C.B. 1) in this result.

The only case cited by the parties which has been decided since section 2053(b) was enacted in 1954 is *Central Trust Co. of Cincinnati, Ohio* v. *Welch*, 304 F. 2d 923 (C.A. 6, 1962), affirming 193 F. Supp. 336 (S.D. Ohio 1961). There it was held that attorneys' fees, trustee's fee, court costs, and other expenses incurred and paid by the trustee in connection with litigation involving an inter vivos trust created by the decedent were expenses *relating to the administration of property not subject to claims* that was included in the decedent's gross estate. Such expenses were allowed as deductions under section 2053(b).

It now appearing that court decisions and the provisions of the Internal Revenue Code are in accord as to the deductibility of non-probate administration expenses in general, we must determine whether the trustees' fees in question are deductible from the gross estate of Mary E. Burrow.

It is uncontested that the fees paid the trustees were reasonable in relation to the size of the trust and in accordance with the custom and practice of banks in Kansas. And the fees were paid within the time required by section 2053(b).

Inasmuch as the amount and time of payment meet the requirements of the statute, the only other condition is that the "other administration expenses" are deductible "to the same extent such amounts would be allowable as a deduction under subsection (a) if such property were subject to claims." We interpret this to mean that the administration expenses sought to be deducted under subsection (b) should be of the same nature as administration expenses deductible under subsection (a), i.e., that the expenses must be incurred in winding up the affairs of the deceased. The regulations under 2053(b) describe the expenses of this category as being those occasioned by the death of the decedent and incurred in settling the decedent's interest

in the property or vesting good title to the property in the beneficiaries. Sec. 20.2053–8, Estate Tax Regs.

To determine whether the trustees' fees in question were in payment of services in the nature of winding up the decedent's affairs, the specific acts performed by the trustees must be examined.

We have found, *supra*, that those acts of the corporate trustee relating to the determination of estate and inheritance taxes were in the nature of executor's duties and, therefore, that such acts gave rise to an expense deductible for income tax purposes by the probate estate rather than the trust. We conclude, furthermore, that this expense is also deductible by the gross estate for estate tax purposes since it was incurred for the benefit of the gross estate as a whole. Since this portion of the trustees' fees was not deducted from the income of the probate estate, it may be deducted as an administration expense from the gross estate for estate tax purposes. (See sec. 642(g), 1954 Code, set out in the margin, *infra*.)

The remaining services performed by the corporate trustee and the individual trustees were related solely to the administration of the trust. We find, however, that these services were primarily occasioned by the death of the decedent. The trustees distributed specific gifts and bequests to named beneficiaries of the trust, sold stock to pay taxes, paid certain expenses of the trust, divided the trust into two separate continuing trusts, and performed accounting services and other nonrecurring duties. These acts, related to the winding up of the decedent's affairs and the vesting of title to the property in the beneficiaries, gave rise to expenses for the administration of nonprobate property that was included in the gross estate.

There were, however, certain services performed by the corporate trustee during the period of approximately 2 months between the establishment of the trust and the death of the decedent which were not occasioned by the decedent's death. In the portion of this opinion relating to the income tax issue, we held trustees' fees to be deductible in the year paid, even though some of the services were rendered before and after such year, since the trust was on a cash basis. On the other hand, in dealing with the estate tax, we are not concerned with taxable years, but rather with those services performed after the death of the decedent.

From the record we find it impossible to place an accurate value upon those services rendered before the death of the decedent. Consequently, we conclude that the estate tax deduction should be reduced in the amount of two-twelfths (representing the 2 months the settlor lived during the first trust year) of the normal annual fee agreed to by the parties which would have been paid to the corporate trustee

had the decedent lived for the entire trust year. Since the individual trustees did not assume the duties of trusteeship until after the death of the settlor, they performed no services before her death for which an apportionment would be necessary.

Accordingly, with the exception of that portion of the corporate trustees' fee which is attributable to the period prior to the decedent's death, the trustees' fees are held to be deductible for estate tax purposes under section 2053(b).

### *Issue 4. Deduction for Income and Estate Taxes.*

Having determined that the trustees' fees are deductible in part by the trust for income tax purposes under section 212 and that the same fees are also deductible in part by the estate for estate tax purposes under section 2053(b), the only question remaining is whether both amounts can be properly deducted simultaneously.

Because of the inherent difference in the nature of the income tax and the estate tax, it has been held that expenses which fall into this category are proper deductions for both purposes unless *specifically* prohibited by Congress. See *Robert J. Kleberg, et al., Executors*, 31 B.T.A. 95 (1934); *Adams* v. *Commissioner*, 110 F. 2d 578 (C.A. 8, 1940); and *Estate of David G. Reid*, 15 T.C. 573 (1950).

If Congress has enacted such a specific prohibition, it would appear to be section 642(g).[5] While the respondent contends that all "double deductions" are disallowed by section 1.212-1(o), Income Tax Regs., which provides that deductions claimed under one section of the Internal Revenue Code may not again be deducted under another section, there is no reasonable basis for such interpretation in any section of the 1954 Code. On the contrary, section 642(g) specifically allows deductions for purposes of both taxes in certain instances. We therefore find no merit in the respondent's contention.

It is clear that section 642(g) prohibits the deduction of the same expense for income and estate tax purposes when the taxable income of the *estate* is involved. It is equally clear that the word "trust" is omitted. This omission becomes especially conspicuous when it is observed that the words "estate" and "trust" appear in each of the other eight subsections of section 642. Where the income tax deduction sought is from the income of a *trust*, as in the present case, is it

---

[5] SEC. 642. SPECIAL RULES FOR CREDITS AND DEDUCTIONS.

(g) DISALLOWANCE OF DOUBLE DEDUCTIONS.—Amounts allowable under section 2053 or 2054 as a deduction in computing the taxable estate of a decedent shall not be allowed as a deduction in computing the taxable income of the estate, unless there is filed, within the time and in the manner and form prescribed by the Secretary or his delegate, a statement that the amounts have not been allowed as deductions under section 2053 or 2054 and a waiver of the right to have such amounts allowed at any time as deductions under section 2053 or 2054. This subsection shall not apply with respect to deductions allowed under part II (relating to income in respect of decedents).

necessary to elect whether the expense will be deductible for income tax purposes *or* for estate tax purposes? [6] We think not.

Section 642(g) was first enacted in 1942 as section 162(e) of the Internal Revenue Code of 1939. At that time there was no estate tax provision for the deduction of administration expenses that were related to nonprobate property. The only expenses which could be deducted for estate *and* income tax purposes were those administration expenses incurred by the probate estate. Therefore, section 162(e) was enacted for the specific purpose of prohibiting the deduction of amounts allowable "in computing the net estate of the decedent" and "in computing the net income of the estate."

Section 2053(b) was a new provision in the 1954 Code which allowed, for the first time, the deduction of administration expenses relating to nonprobate property included in the gross estate. However, section 162(e) was reenacted as section 642(g) of the 1954 Code in substantially the same wording. Consequently, section 642(g) continued to be a specific rather than a general limitation, even though administration expenses relating to probate and nonprobate property were to be allowed in computing the gross estate.

Furthermore, the legislative history of section 642(g) leaves doubts as to how far-reaching Congress intended the statutory prohibition to be. The committee reports are consistent with the actual wording of the statute in using, exclusively, the word "estate" with no mention of trusts. It might be contended that "estate" could encompass *trust* estates and *gross* estates. However, this would result in adding a new meaning to the word "estate" which is used throughout the Internal Revenue Code almost as a term of art.

If Congress deemed it necessary to distinguish trusts and estates in all the other subsections of section 642, we think it would have used both words in subsection (g) as well. If the prohibition was intended to apply to trusts, it would have been a simple matter to add the word "trust." It is not our responsibility to rewrite the statute. We must interpret it as we find it.

Absent any statutory prohibition, we hold that the expenses here involved are deductible in part from the income of the trust, a taxable entity separate and apart from the probate estate, and also deductible in part from the gross estate of Mary E. Burrow for estate tax purposes.

Reviewed by the Court.

*Decisions will be entered under Rule 50 in all three dockets.*

PIERCE and MULRONEY, *JJ.*, dissent.

---

[6] Three estate tax authorities have recognized the existence of this issue. See 1 Casner, Estate Planning 122, fn. 33; Lowndes and Kramer, Estate and Gift Taxes, sec. 15.4, p. 317 (2d ed.) ; and James B. Lewis, The Estate Tax, (Practicing Law Institute), p. 125, fn. 90.