**MANUFACTURERS HANOVER TRUST COMPANY, as Executor of the Last Will and Testament of Caryl Hackstaff Wood, Deceased**

v.

**The UNITED STATES.**

**No. 191–67.**

United States Court of Claims.

May 16, 1969.

Edward S. Bentley, New York City, for plaintiff.

William C. Ballard, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

This is an income tax refund case that comes before the court on defendant's motion for summary judgment. All the facts are stipulated. For the reasons stated in the opinion, we find the plaintiff is not entitled to recover, and that the defendant's motion should be granted.

Plaintiff here is the duly appointed and acting executor of the estate of Mrs. Caryl Hackstaff Wood, who died testate on October 3, 1957. Her will provided that her husband, Howard O. Wood, Jr., was to be the sole residuary legatee of her estate, which included at the date of Mrs. Wood's death certain securities having a fair market value of $65,871.-47, and this value was included in her gross estate for federal estate tax purposes. It is undisputed that at all times subsequent to Mrs. Wood's death and until May 19, 1964, the securities were held by plaintiff as executor of Mrs. Wood's estate and in no other legal capacity.

On April 9, 1964, Mr. Wood died testate, leaving his estate to his two children. On April 23, 1964, plaintiff was appointed executor of Mr. Wood's estate. Included in Mr. Wood's gross estate was the fair market value of his interest in his wife's estate, which was still undergoing administration at the time of his death. On the date of Mr. Wood's death, the value of the securities involved in this suit and held by Mrs. Wood's estate was $159,766.63.

On May 19, 1964, and on May 20, 1964, plaintiff on behalf of Mrs. Wood's estate sold the securities for $160,742.09 in the ordinary course of the administration of Mrs. Wood's estate. The proceeds of the sale were used to purchase $160,000 of United States Treasury Notes maturing in 1965. As executor of Mrs. Wood's estate, plaintiff duly filed a fiduciary income tax return for the year 1964. The return showed that Mrs. Wood's estate had realized a long-term capital gain from the sale of the securities in the amount of $94,870.62, which represented the difference between the sales price of the securities and their fair market value as of the date of Mrs. Wood's death. Mrs. Wood's estate also reported dividend and interest income attributable to the securities.

In July of 1965, plaintiff, acting as executor of Mrs. Wood's estate, sold the

Treasury Notes and distributed the proceeds to the estate of Howard O. Wood, Jr.

On December 31, 1964, plaintiff as executor of Mrs. Wood's estate filed an amended income tax return for Mrs. Wood's estate. In that return, plaintiff claimed that instead of the long-term capital gain reported in the fiduciary return for 1964, Mrs. Wood's estate had realized only a short-term capital gain of $975.46,[1] the difference between the value of the securities on April 9, 1964, the date of Mr. Wood's death, and the sale price of $160,742.09. Plaintiff filed a claim for refund based on the amended return and, upon the disallowance of the claim, suit in this court followed.

Although the legal basis on which plaintiff claims recovery is not entirely clear, plaintiff's theory seems to be as follows:

As the executor of Mrs. Wood's estate, the plaintiff bank was administering her estate for the benefit of Mr. Wood, the sole residuary legatee, and later for Mr. Wood's estate of which the plaintiff bank was also the executor. Thus, plaintiff says, when Mr. Wood died, his beneficial interest in Mrs. Wood's estate vested in the legatees under his will and the legal title to his personal property passed to his executor, the plaintiff bank, so that the executor of Mr. Wood's estate received all the property with a basis equal to the fair market value thereof as of the date of Mr. Wood's death.

As a corollary argument, plaintiff contends that the executor of Mrs. Wood's estate and the executor of Mr. Wood's estate were the same institution, and that when plaintiff, as the executor of Mrs. Wood's estate, sold the securities in 1964, it did so at the direction of the executor of Mr. Wood's estate, also the plaintiff bank. Continuing on the same line, plaintiff maintains that the fact that the securities were sold by the executors of Mrs. Wood's estate, instead of by the executor of her husband's estate, is immaterial and that the funds obtained from the sale were used to pay the federal estate taxes of Mr. Wood's estate. Viewed in this light, the estates seem to merge—at least plaintiff would have us believe this—so that Mr. Wood, and later his estate, were in control all along of the securities held by the estate of Mrs. Wood.

We shall not attempt to explore the many problems that would arise by the adoption of a rule which rests on the fact that the executor of two estates is the same entity. We merely note the unfair effect of such a rule on the estates of related decedents, when those estates are being administered by separate entities.

Aside from the problems mentioned above, there are several serious obstacles to plaintiff's right of recovery. The first is that plaintiff's position collides squarely with the provisions of Section 1014 of the Internal Revenue Code of 1954.[2]

1. Plaintiff admits that the estate of Mrs. Wood owes a tax on this amount, but plaintiff has not made clear why it makes this concession. We presume that plaintiff admits that it owes the tax as executor of Mrs. Wood's estate only as holder of the legal title to the securities and as agent for Mr. Wood's estate.

2. Insofar as applicable, § 1014 reads as follows:
"*Sec. 1014. Basis Of Property Acquired From A Decedent.*
"(a) *In General.* Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise dis-

posed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections.
"(b) *Property Acquired From the Decedent.*—For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent:
"(1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent;"
\*    \*    \*    \*    \*

■ Section 1014(a) states that the basis of property in the hands of a person acquiring the property from a decedent shall be the fair market value of the property at the time of the decedent's death. Section 1014(b) (1) specifically provides that a decedent's estate shall be considered to have acquired property from the decedent for the purpose of applying the general basis rules of Section 1014(a). There is no doubt that for all legal purposes plaintiff held Mrs. Wood's estate as executor and that it sold the securities in 1964 acting in that capacity. In saying that the securities were sold to pay the federal estate taxes due by Mr. Wood's estate, plaintiff overlooks the fact that it was the 1964 sale of the securities which engendered this tax controversy. Plaintiff not only sold those securities as the executor of Mrs. Wood's estate, but it reinvested them in Treasury Notes and did not sell the notes or distribute the proceeds to Mr. Wood's estate, a separate legal entity, until more than a year later.

■ The argument that the two estates merged and must be regarded as one because Mr. Wood, as the residuary legatee, was the sole beneficiary of Mrs. Wood's estate, ignores the concept that each decedent's estate is a separate entity, as well as the distinction which the courts have made in tax cases between the estate of a decedent and the ultimate legatees. Y.M.C.A. of Columbus, Ohio v. Davis, 264 U.S. 47, 44 S.Ct. 291, 68 L. Ed. 558 (1924); Continental Illinois Nat'l Bank and Trust Co. of Chicago v. United States, 403 F.2d 721, 185 Ct.Cl. 642 (1968), cert. denied, 394 U.S. 973, 89 S.Ct. 1456, 22 L.Ed.2d 752 (Apr. 22, 1969). See also Brewster v. Gage, 280 U.S. 327, 334, 50 S.Ct. 115, 74 L.Ed. 457 (1930), in which the Supreme Court declared that upon the death of a decedent, a legatee has no title or right to any particular personal property except the right to a distributive share of what remains after proper administration.

Finally, it seems to us that plaintiff's position is inconsistent with the manner in which plaintiff handled the estate of Mrs. Wood. Plaintiff not only treated Mrs. Wood's estate as a wholly separate entity from Mr. Wood's estate, but in both the original fiduciary income tax return filed December 1, 1964, and in the amended return filed December 31, 1964, plaintiff recognized that any income received as a result of the capital gain realized from the sale of the securities in 1964 was taxable to the estate of Mrs. Wood.

Plaintiff has not shown that a different conclusion is justified by any law of the State of New York where the estates were administered, by any provision of the Internal Revenue Code, or by any court decision. Therefore defendant's motion for summary judgment is granted, and plaintiff's petition is dismissed.

SKELTON, Judge (dissenting):

I respectfully dissent, because I think the majority opinion is contrary to the decision of the Supreme Court in Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457 (1930) and also is in conflict with Section 1014 of the Internal Revenue Code (1954).

The case before us is a New York case and we must be governed by the laws of that state with respect to title to property. The above case of Brewster v. Gage was likewise a New York case and is squarely in point here.

While it is true that in that case the court stated that in the State of New York upon the death of the owner, title to his real estate passes to his heirs or legatees and that a different rule applies to personal property, the title to personal property does not vest at once in the heirs or legatees. But upon the death of the owner there vests in each of them the right to his share in the property after administration and the right to have it delivered upon entry of the decree of distribution. The court goes on to say that the title to all personal prop-

erty belonging to the estate vests in the administrators or executors but that such title is taken *not for themselves, but in the right of others* for the proper administration of the estate and for distribution of the residue. The court said that the decree of distribution confers no new right, but merely identifies the property remaining and requires the administrators or executors to deliver it to the legatees. The court then said, *"The legal title so given relates back to the date of the death."* [Emphasis supplied.] The court said that at the time of the testator's death, the legatee became enriched by the worth of the property left to him and that notwithstanding the postponement of transfer of the legal title to him, Congress had the power to fix the value at the time title passed from the decedent as the basis for determining gain or loss upon sale of the right or of the property before or after the decree of distribution. The court held that there was no reason to differentiate between the value of real estate and specific bequests at the time of death and value of other property at the date of the decree of distribution and that the Act of Congress indicates an intention that the value at the time of death of the decedent was to be taken as the basis *in all cases.* The court said "There appears to be no reason why gains or losses to the estate should be calculated on one basis and those to the residuary legatees on another."

It will be remembered that in that case the decedent left stocks to a legatee by will. The stocks were disposed of in due course to the legatee and he later sold them. In his income tax returns, he computed profit or loss by comparing the selling price of the stocks with its value at the date of the decree of distribution instead of at the date of the death of the testator. The court held that the date of death of the decedent was the controlling date and the stocks must be valued as of that time and not at the time of the date of distribution.

Applied to the case before us, this means to me that at the time of Mrs.

Wood's death, the stock was worth $65,871.47, and we must accept that value for the stock at the time of her death. At the time of Mr. Wood's death, the securities were worth $159,-766.63, and we must accept that value as being the true value at the time of his death. The securities were later sold for $160,742.09. Consequently, the only tax due would be the difference between the value of the stock at Mr. Wood's death and its value at the time the securities were sold.

In my opinion, it matters not that the executors of Mrs. Wood's estate had not distributed the stock to Mr. Wood before his death, nor to his estate after his death before the stock was sold. Under the authority of the above case, Mr. Wood had the equitable title to the stock at the moment of Mrs. Wood's death. The executors of Mrs. Wood's estate took title in trust for the benefit of Mr. Wood. The sale made by them could only have been made for him or for his estate. The above case specifically states that when the distribution is made, the title of the legatee relates back to the date of the death of the decedent. Applied to our case, this means that when the proceeds of the sale of the stock, which was later reinvested in bonds and then sold and the proceeds distributed to Mr. Wood's estate, the title of his estate to the stock related back to the date of the death of Mrs. Wood and although the sale of the stock was made by the executors in the name of Mrs. Wood's estate, in truth and in fact it was made for his estate and for his legatees.

In other words, the title in Mr. Wood and later in his estate and legatees, to the stock left to him by his wife related back to the date of Mrs. Wood's death at the time of the distribution to him of the proceeds of the sale of the stock. Therefore, in my opinion, the position of the government is wrong and that of the plaintiff is correct.

It seems significant to me that the government has admitted that if the executors of Mrs. Wood's estate had dis-

tributed the stock to Mr. Wood immediately after her death, that plaintiff would be entitled to recover in this case. By this argument, the government is contending that the date of distribution is the controlling date. This is not the law, because Mr. Wood's title to the stock related back to the date of death of Mrs. Wood, according to the above case, regardless of the date of the distribution of the stock.

This is in accord with Section 1014 of the Internal Revenue Code, which says that the basis of property acquired by a person from a decedent shall be the fair market value of the property at the date of the decedent's death. The confusing aspects of this case are that we have two deaths and two administrations with the same executor. It is necessary to consider the value of the property at the date of each death to get the proper basis for each successive owner. When we do this, we see that at the date of Mrs. Wood's death, the property had a value of $65,871.47. All parties agree to this. Therefore, Mr. Wood, the legatee, had the equitable title to the property at this value, subject to the payment of any debts of Mrs. Wood. At oral argument, it was made clear that the administration of her estate was independent of the court and that there were no unpaid debts. Consequently, there was no need for further administration and Mr. Wood was entitled to the property with the above basis. But for some unknown reason, the executor did not distribute it to him. In my opinion, this did not affect his equitable title and right to the property. He could have forced its distribution. At this point, he died leaving the property to his children by will as his sole legatees. This is the second death, and we now have a new date of death and a new basis of the property for his legatees who hold the equitable title, subject to the payment of his debts, if any. This gives rise to the real question in the case, which seems to have been overlooked by the parties and the majority, and that is, what is the basis of Mr. Wood's estate and legatees in the property and how do you determine it? The answer is found in the statute and in Brewster v. Gage, *supra*. Their basis is the fair market value of the property at the date of the death of the "decedent," which at this stage is the date of the death of Mr. Wood. This value at the date of his death was $159,766.63. We are no longer concerned with the date of death of Mrs. Wood, nor the value of the property when she died. Also, it is immaterial that the property left by Mrs. Wood was in a different form at the time of Mr. Wood's death.

Accordingly, when the property was sold after Mr. Wood's death for $160,742.09, the equitable title was in his legatees, and when distribution was made to Mr. Wood's estate, its legal title related back to the death of Mrs. Wood. When the property is distributed to the legatees of Mr. Wood, their legal title will relate back to the date of his death, and their basis, which is what we are really concerned with here, will be the fair market value of the property at his death.

Most of the confusion in the case was caused by the way the executor handled the property and filed the tax returns. It erroneously considered that both the legal and equitable title to the property was in the estate of Mrs. Wood until the date of distribution to Mr. Wood's estate after his death. The government is taking advantage of this situation by making it appear that the date of distribution fixes the value date for the estate of Mr. Wood and his legatees. By this means, it seeks to have the original value determined as of the date of Mrs. Wood's death and then ignores the value at the date of death of Mr. Wood, notwithstanding the fact that we are concerned only with the value at the time of his death. I think the two deaths and the two values must be considered separately if we are to follow the statute and Brewster v. Gage.

In my opinion, the plaintiff here should be considered as maintaining this suit for the estate of Mr. Wood and for

his legatees who hold the beneficial title to the property.

I would deny the defendant's motion for summary judgment and assign the case for trial.