ESTATE OF HOWARD O. WOOD, JR., MANUFACTURERS HANOVER TRUST COMPANY, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6561–67.    Filed June 3, 1970.

*Edward S. Bentley*, for the petitioner.
*Powell W. Holly, Jr.*, for the respondent.

OPINION

STERRETT, *Judge:* The respondent determined a deficiency in the Federal estate tax of the Estate of Howard O. Wood, Jr., in the amount of $20,388.88. There are two questions presented for our decision. The first is whether the income tax liabilities of the Estate of Caryl Hackstaff Wood should be allowed as a deduction to reduce the value of the interest of the present decedent, Howard O. Wood,

Jr., in the prior estate. The second concerns the proper method of computing the credit for tax on prior transfers under section 2013 of the Internal Revenue Code of 1954.[1] Specifically as to the credit, the question is whether administration expenses of the prior Estate of Caryl Hackstaff Wood, claimed as an income tax deduction by the fiduciary of that estate, should be applied against the taxable estate for the purpose of computing the credit of the Estate of Howard O. Wood Jr., under section 2013(b).

All of the facts have been stipulated, and those facts are so found.

Caryl Hackstaff Wood (Caryl), wife of the within decedent Howard O. Wood, Jr. (Howard), died, testate, on October 3, 1957; a resident of Nassau County, N.Y. Her last will and testament was duly admitted to probate on October 25, 1957, by the Surrogate's Court of Nassau County, N.Y. On October 25, 1957, Manufacturers Hanover Trust Co. (Hanover) was appointed by the above-mentioned court, and qualified as executor.

Under her last will and testament, Caryl, after making a bequest of personal property valued at $5,224 to her husband Howard and bequests of other personal property valued at $6,543.49 to other persons, gave the residue of her estate to her said husband. On December 30, 1958, Hanover, as executor of Caryl's estate, filed a Federal estate tax return with the district director of internal revenue at Brooklyn, New York, and paid the tax shown on the return.

Hanover as executor of Caryl's estate paid debts, funeral, and administration expenses in the amount of $10,417.99 which was deducted from her gross estate.

In addition to the debts, funeral, and administration expenses included in the above-mentioned sum of $10,417.99, Hanover incurred and paid other administration expenses totaling $55,606.41 which was claimed as a deduction from gross income in determining the estate's Federal income tax liability.

On or about July 22, 1963, in a proceeding in this Court, docket No. 522–62, brought by Hanover as executor of Caryl's estate to review a deficiency in estate tax theretofore determined by respondent, it was determined, among other things, that the value of the gross estate of said decedent was $902,820.60, that debts, funeral, and administration expenses allowed as a deduction were $10,417.99, and that her net taxable estate was $386,201.30 after allowing an exemption of $60,000 and a marital deduction of $446,201.31. In that proceeding a basis for settlement was reached and a stipulation of settlement was filed and a decision was entered in accordance therewith, setting forth a net estate tax in the amount of $100,662.34 after allowing a credit for State death taxes in the amount of $8,278.44.

[1] Section references are to the Internal Revenue Code of 1954 unless otherwise stated.

Hanover as executor of said estate paid death taxes in the amount of $111,961.99, of which $100,662.34 represented the Federal estate tax determined as aforesaid.

On April 9, 1964, Howard O. Wood, Jr., died a resident of Nassau County, N.Y., leaving a last will and testament which was, on April 23, 1964, duly admitted to probate by the Surrogate's Court of Nassau County, N.Y. On April 23, 1964, Manufacturers Hanover Trust Co. of New York [2] (petitioner) was appointed by the Surrogate's Court as executor of Howard's estate, and qualified as such executor.

On April 9, 1964, the date of Howard's death, the estate of his wife, Caryl, was still undergoing administration. Among the assets held on that date by Hanover, as executor of Caryl's estate, were certain securities. On May 19, 1964, and May 20, 1964, after Howard's death, Hanover sold these securities for $160,742.09 and used the proceeds to purchase U.S. Treasury notes in the amount of $160,000 maturing in 1965. In July of 1965 Hanover sold these notes and distributed the proceeds to Howard's estate. The aforesaid securities with their respective bases, sales prices, and the gain attributable to each were as follows:

200 shares Potomac Electric Power Co., common:
| | | |
|---|---|---|
| Sale price | $4,022.92 | |
| Basis | 2,038.27 | |
| Gain | | $1,984.65 |

500 shares General Motors Corp., common:
| | | |
|---|---|---|
| Sale price | $44,708.61 | |
| Basis | 20,312.50 | |
| Gain | | 24,396.11 |

600 shares General Foods Corp., common:
| | | |
|---|---|---|
| Sale price | $51,767.99 | |
| Basis | 14,287.50 | |
| Gain | | 37,480.49 |

700 shares Consolidated Edison Co., common:
| | | |
|---|---|---|
| Sale price | $59,326.67 | |
| Basis | 28,764.40 | |
| Gain | | 30,562.27 |

46 shares Potomas Electric Power Co., common:
| | | |
|---|---|---|
| Sale price | $915.90 | |
| Basis | 468.80 | |
| Gain | | 447.10 |
| Total | | 94,870.62 |

[2] Since Manufacturers Hanover Trust Co. was executor of both Howard's and Caryl's estates to avoid confusion we will refer to it as "petitioner" as to Howard's estate and as "Hanover" concerning Caryl's estate.

Hanover filed Federal and New York income tax returns for Caryl's estate for the fiscal year ending August 31, 1964, in which were reported capital gains resulting from the said sales, and also dividend and interest income attributable to estate securities. The Federal income tax return filed by Hanover showed a net gain from the sale or exchange of capital assets of $95,164.42 and other taxable income of $42,932.74, making a total taxable income of $138,097.16 and a tax of $41,597.48. The tax was paid upon filing of the return. Of the net gain of $95,164.42 the amount of $94,870.62 was attributable to the sale of the above securities using as a basis their values as of the date of Caryl's death.

On or about December 31, 1964, Hanover filed an amended Federal income tax return for the fiscal year ended August 31, 1964, and a claim for refund in the amount of $29,675.72. The reasons stated on the claim for refund were as follows:

On April 9, 1964 Howard O. Wood, Jr., the sole residuary legatte [sic] of the Caryl Hackstaff Wood Estate, died and the securities in the Estate of Caryl Hackstaff Wood were revalued and reported in the Estate of Howard O. Wood, Jr.

Therefore, any sales of securities after April 9, 1964 we used the values of October 3, 1957, the date of death of Caryl Hackstaff Wood, instead of the values of April 9, 1964, the date of death of Howard Q. [sic] Wood, Jr.

We also reported the income accrued and collected from April 9, 1964 to August 31, 1964 taxable to the Estate [of] Howard O. Wood, Jr.

On or about October 13, 1965, the Commissioner allowed said claim for refund to the extent of $6,852.46, by reason of an allowance of a deduction for distribution to beneficiaries in the amount of $11,028.89 not previously deducted.

Hanover as executor of Caryl's estate brought a suit for refund in the U.S. Court of Claims. The Court of Claims in *Manufacturers Hanover Trust Co.* v. *United States*, 410 F. 2d 767 (Ct. Cl. 1969), held for the Commissioner in disallowing the refund.

On or about December 10, 1964, Hanover, as executor of Caryl's estate, filed a New York State income tax return for the fiscal year ended August 31 ,1964. This return bore substantially the same information as the Federal income tax return filed by Hanover for her estate. The tax shown on the return was $8,172.18.

On or about December 31, 1964, Hanover filed an amended New York State income tax return for the fiscal year ended August 31, 1964, and a claim for refund of $5,617.29. On or about February 19, 1968, the New York State Tax Commission disallowed the claim in full.

On July 8, 1965, petitioner, as executor of Howard's estate, filed a Federal estate tax return with the district director of internal revenue at Brooklyn, New York. Among the estate assets shown on the return

was the decedent's interest in Caryl's estate, valued as of April 9, 1964, at $987,552.37.

In Schedule J of said return, "Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims," there were set forth deductions in "undetermined" amounts for Federal income taxes and for New York income taxes on the Estate of Caryl Hackstaff Wood for the fiscal year ended August 31, 1964.

The value of the decedent's interest in said estate as of April 9, 1964, was adjusted to $1,007,627.41 as set forth in the statutory notice of deficiency. In determining said amount of $1,007,627.41 the respondent allowed no deduction for the Federal and New York income taxes claimed in this proceeding.

The above Federal estate tax return for Howard's estate filed by petitioner showed a net estate tax payable after the deduction of a credit for tax on prior transfers of $38,923.74 from the tax. Respondent in his statutory notice limited allowance of the credit to $32,778.04 when computing the net deficiency.

As we stated in our opening paragraph there are two issues for decision in this case. The first is whether certain New York State and Federal income tax liabilities incurred and paid by Caryl's estate subsequent to the death of the within decedent, Howard, reduced his interest in the prior estate for purposes of computing his taxable estate. The petitioner advances two alternative arguments to justify this proposed reduction: (1) That the value of Howard's interest in Caryl's estate was necessarily diminished because after the payment of income taxes by Caryl's executor there would be less to distribute to Howard's estate; or (2) Howard's estate is entitled to a deduction in the amount of these taxes under section 2053(a)(3) and (b) as claims agains the estate. We find neither of these arguments persuasive.

Section 2031(a) provides:

(a) GENERAL.—The value of the gross estate of the decedent shall be determined by including to the extent provided for in this part, the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated.

and section 2033 provides:

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

The thrust of both of these sections is that the extent and value of the decedent's gross estate is fixed as of *the time of his death*.[3] See sec. 20.2033–1 (a), (b), Estate Tax Regs.

---

[3] Since the alternate valuation date was not elected by the petitioner under sec. 2032 the time of death is the crucial moment for inclusion and valuation.

On April 9, 1964, the date of Howard's death, Caryl's estate was undiminished by the income taxes at issue herein. Not only was Caryl's estate without liability in this regard, but the greatest part of the taxes [4] was not incurred until her estate sold certain securities on May 19 and May 20, 1964, over a month after Howard's death.

We recognize the fact that due to the Federal and State income taxes paid by Caryl's estate there was less remaining for distribution to Howard's estate. While the operation of sections 2031 and 2033 may appear harsh under these circumstances, we cannot deviate from the clear import of the statute.[5]

Petitioner, itself, seems to recognize the futility of this argument and, therefore, concentrates most of its effort, on brief, in its attempt to justify the deduction of these income taxes under section 2053.

Section 2053(a), in general, permits the deduction from the decedent's gross estate of funeral expenses, administration expenses, claims against the estate, and prescribed indebtedness. Although taxes are not specifically mentioned in the statute as being deductible, they are deductible under section 2053(a)(3) as claims against the estate. Sec. 20.2053–6(a), Estate Tax Regs.; Stephens & Maxfield, Federal Estate and Gift Taxes 172 (2d ed.); see, e.g., *Estate of William Church Osborn*, 28 T.C. 82 (1957). It is axiomatic that, in order to be deductible the income taxes, at issue here, must in the first instance constitute a claim against Howard's estate.

We find for the respondent; the taxes, herein, were not a claim against Howard's estate. They were the sole liability of Caryl's estate, as the U.S. Court of Claims determined in *Manufacturers Hanover Trust Co.* v. *United States, supra*. In that case the court held that the two estates were distinct legal entities and the gain attributable to the sale of the securities was taxable to Caryl's estate. In view of the fact that Howard's estate never became liable for the payment of these taxes they could not constitute a claim. We cannot permit one estate to deduct a liability incurred and paid by another legal entity.[6]

In its attempt to justify the fact that the taxes, at issue, were incurred subsequent to Howard's death petitioner cited many cases in

---

[4] Caryl's estate's Federal income tax return for the fiscal year ended Aug. 31, 1964, showed, in addition to capital gains from the above sales, dividends, interest, and foreign income totaling $42,932.74. On brief petitioner alluded to the possibility that some of this gross income was earned prior to Howard's death. However, no evidence was offered in substantiation of this allegation.

[5] In this regard the prior litigation concerning Caryl's estate has particular importance. In *Manufacturers Hanover Trust Co.* v. *United States*, 410 F. 2d 767 (Ct. Cl. 1969), the Court of Claims held that despite the fact that the two estates had the same executor no merger was thereby effected.

[6] If Howard's estate was liable for reimbursement of Caryl's estate we were not apprised of it. Nor were allegations made concerning transferee liability under secs. 6901 *et seq.*

which trusts created by decedents are included in their gross estates and the issues are the deductibility of trust expenses incurred in the administration process.[7] It is true, as petitioner contends, that in these cases the deductible expenses were incurred subsequent to the decedent's death. However, these cases indicate an additional bar to deductibility of the within expenses. The common thread which runs through these decisions is that the expenditures, in question, were occasioned by the death of the decedent. In the instant case the securities were not sold because of Howard's death and, although petitioner alleges on brief that they were sold to pay death taxes, no offering of evidence was made which would substantiate this allegation. In fact the Court of Claims in *Manufacturers Hanover Trust Co.* v. *United States, supra* at 770, felt it necessary to express the opposite view.

In sum we would note that the income taxes, involved herein, were not claims against Howard's estate, nor, were they occasioned by his death. Under these circumstances section 2053 cannot apply.

As we stated above the second issue for our decision concerns the computation of the "Credit For Tax on Prior Transfers" under section 2013. Section 2013(b) provides as follows:

(b) COMPUTATION OF CREDIT.—Subject to the limitation prescribed in subsection (c), the credit provided by this section shall be an amount which bears the same ratio to the estate tax paid (adjusted as indicated hereinafter) with respect to the estate of the transferor as the value of the property transferred bears to the *taxable estate of the transferor (determined for purposes of the estate tax)* decreased by any death taxes paid with respect to such estate and increased by the exemption provided for by section 2052 or section 2106(a)(3), or the corresponding provisions of prior laws, in determining the taxable estate of the transferor for purposes of the estate tax. For purposes of the preceding sentence, the estate tax paid shall be the Federal estate tax paid increased by any credits allowed against such estate tax under section 2012, or corresponding provisions of prior laws, on account of gift tax, and for any credits allowed against such estate tax under this section on account of prior transfers where the transferor acquired property from a person who died within 10 years before the death of the decedent. [Emphasis added.]

The computation called for in this subsection is reducible into the following formula:

$$\frac{\text{value of transferred property}}{\text{transferor's adjusted taxable estate}} \times \text{Transferor's adjusted Federal estate tax}$$

Sec. 20.2013–2(a), Estate Tax Regs.

The parties involved herein have stipulated the numerator of the above fraction, in accordance with our opinion in *Estate of May H.*

---

[7] *Haggart's Estate* v. *Commissioner,* 182 F. 2d 514 (C.A. 3, 1950), reversing 13 T.C. 14 (1949); *Commissioner* v. *Davis,* 132 F. 2d 644 (C.A. 1, 1943), affirming 45 B.T.A. 135 (1941); *Mary E. Burrow Trust,* 39 T.C. 1080 (1963), affd. 333 F. 2d 66 (C.A. 10, 1964); *Central Trust Co. of Cincinnati, Ohio* v. *Welch,* 304 F. 2d 923 (C.A. 6, 1962).

*Gilruth*, 50 T.C. 850 (1968). *Estate of May H. Gilruth, supra*, requires that expenses of administration which would be allowable under section 2053, but, are deducted from the estate's Federal income tax in accordance with section 642(g) are, nonetheless, deducted from the numerator for purposes of section 2013(b). Due to this stipulation our sole concern is whether $55,606.41, which Caryl's estate incurred and elected to deduct on its Federal income tax return rather than its Federal estate tax return under section 642(g), should be deducted from the "taxable estate" for purposes of section 2013(b). We must simply determine the meaning, in the context of the statute, of "taxable estate."

We feel that the statute plainly states that "taxable estate" means the actual amount used in the determination of the prior decedent's estate tax liability. The parenthetical phrase, "(determined for purposes of the estate tax)," makes this abundantly clear. In our view there can be no other reasonable construction. The only adjustments to this "taxable estate" are prescribed by the statute and no others are permissible.

As support for our conclusion we refer to section 20.2013–2(c), Estate Tax Regs., which states that "taxable estate" is to be defined under section 20.2051–1, Estate Tax Regs. Section 20.2051–1 indicates that the taxable estate is arrived at by deducting from the gross estate the deductions "authorized" by sections 2052 through 2056. Section 642(g) disallows the deduction of expenses which would be deductible under section 2053, among others, unless the estate waives its rights under section 2053. See sec. 1.642(g)–1, Income Tax Regs. Once rights are waived under section 2053 it seems to us that a deduction from the gross estate is no longer authorized. Therefore, if one traces the definition of "taxable estate" from section 20.2051–1 of the regulations through section 20.2013–2(c) it appears that expenses elected under section 642(g) are not to be deducted in determining "taxable estate."

On brief petitioner raises several arguments in support of its position. None of these, in our view, have any validity. Firstly, petitioner states that the reasoning in *Estate of May H. Gilruth, supra*, concerning "value of the property transferred" is applicable here. This is not so; in *Gilruth* we were concerned with arriving at the net value of the property transferred to the decedent and, therefore, any diminution of that interest would have to be considered. In the instant case we must determine the base upon which the creditable tax was applied, rather than the economic interest of the transferor. In view of this distinction between our inquiries in *Gilruth* and the case at bar we do not find the reasoning in the prior case apposite here.

1188

Also with regard to our opinion in *Gilruth*, petitioner argues that, the Commissioner did apply the principle to the denominator to the extent of deducting the amount of the federal estate tax and the Illinois inheritance tax, even though subsection (d), by its language would appear to be limited to the numerator only, * * *

What the petitioner fails to mention is that section 2013(b), itself, states that death taxes paid, with respect to the prior estate, are to be deducted. *Expressio unius est exclusio alterius.*

Further, with regard to *Gilruth*, petitioner implies that we expressed our disapproval, therein, of the petitioner's stipulation that the denominator of the fraction is not to be decreased by expenses elected under section 642(g). See *Estate of May H. Gilruth*, *supra* at 855–856. Petitioner's interpretation of our opinion is erroneous. We were merely stating that since the issue was not before us, at that time, we did not wish to express our opinion.

Lastly, petitioner argues that it contravenes the legislative intent to subtract the elected expenses from the numerator and not from the denominator; i.e., this would distort the formula. We do not feel this is the case. The numerator of the fraction represents property transferred to the decedent. Since this property is diminished by certain expenditures only the net value is transferred. The denominator, however, represents the base upon which the estate tax was computed, and at the time of this computation the taxable estate was not diminished by the elected expenses. Since section 2013 seeks to apportion the creditable estate tax to the value of the property transferred it seems reasonable to us to reduce the credit when the value of the property transferred is decreased. If the denominator of the fraction were reduced the amount of the credit would not be diminished and this would contravene the purpose of the statute.

In order to reflect administration expenses occasioned by this proceeding, as well as adjustments necessitated by our decision herein,

*Decision will be entered under Rule 50*

Reviewed by the Court.

———

FORRESTER, *J.*, concurring: I agree with the majority both in rationale and result, however I feel compelled to emphasize as to the first issue that the seeming inequity which follows from our holding is not due to the statute, legislative intent, or a constrained interpretation of the law by this Court, but rather to the decision in *Manufacturers Hanover Trust Co.* v. *United States*, 410 F. 2d 767 (Ct. Cl. 1969), and to what can be termed at best, the extremely inept handling of Caryl's estate by its administrators.

In *Manufacturers Hanover Trust Co.*, the court's holding that the sale of the securities was taxable in Caryl's estate is based on the exceedingly strict, formalistic proposition that the act of sale was by her administrators. For all practical purposes, however, the equitable title to the stock was in Howard's estate.

It seems clear that (starting at some time before Howard's death) Caryl's estate had no further reason to remain in existence, and it follows that from this time forward, Howard, and then his estate, had a fully matured right to the stock in question. Under such circumstances it seems to me that the sale should have been considered as a sale by a constructive trustee for Howard's estate, and only taxable there. See Judge Skelton's dissent in *Manufacturers Hanover Trust Co.* v. *United States, supra*. Under such handling, the Federal estate tax liability would be determined on the value of the stock at the time of Howard's death, and his estate would have received a stepped-up basis for the purpose of determining gain on sale of the stock, and no unfairness would have resulted.

FAY, *J.*, agrees with this concurring opinion.